## ROBBINS et al. v. WYNNE.
### No. 9408.

Court of Civil Appeals of Texas. Galveston.
April 23, 1930.

Rehearing Denied May 15, 1930.

Stewart & De Lange and Franklin & Blankenbecker, all of Houston, for appellant.

Ross, Wood, Lawler & Wood and R. Wayne Lawler, all of Houston, for appellee.

LANE, J.

This suit was brought by Mrs. Mary Robbins, joined pro forma by her husband, George H. Robbins, against Robert L. Wynne. The plaintiffs alleged that on or about December 3, 1925, Mary Robbins advanced to Robert Wynne $9,750, with the understanding that it was to be used in part payment of the purchase money of a certain lot in Houston, Tex., upon which was situated an apartment building, the total purchase price being $18,-250. That at the time plaintiff advanced the $9,750 to Wynne it was understood and agreed by the parties that Wynne would attend to the purchase of the property and have the deed by which the property was to be conveyed convey the same to plaintiff and Wynne jointly, each to own an undivided interest therein. That since said purchase, Wynne stated to plaintiff that he had had the deed of conveyance convey the property to the two parties jointly; that he told plaintiff that he was collecting rents and revenues arising from the property and applying same to the

payment of the unpaid balance of the purchase price owing on the property after applying the money advanced by her as a cash payment thereon, and that on the 10th day of July, 1928, Wynne mailed to plaintiff a statement showing the amount of rents and revenues collected and the amount of expenses incurred in the operation of the apartment building; that she did not learn that the deed conveyed the property to Robert L. Wynne only, instead of to her and Wynne jointly as it was agreed by the parties it should do, until just before she filed this suit; that in view of the aforesaid agreements of the parties relative to the purchase of the property and the advance of the $9,-750 by plaintiff to Wynne, which was used in making the first and cash payment on the property, plaintiff and Wynne are the joint owners thereof, each owning an undivided one-half interest therein, the interest of Wynne being subject to the repayment to plaintiff of the said sum of money advanced to Wynne to make the cash payment above stated.

Plaintiff further alleged that the property is of the reasonable value of $19,000.

By the 5th and 6th paragraphs of plaintiffs' petition it is alleged as follows:

"That in addition to the liens aforesaid, the said Robert L. Wynne is personally liable to the said plaintiff, Mrs. Mary Robbins, for one-half of said sum of $9,750.00. That the said Robert L. Wynne is further collecting and converting to his own use the revenues from said property in the sum of $500.00 per month and said Robert L. Wynne has failed to give proper accounting of same to plaintiffs. That plaintiffs, by reason of such actions of defendant, are entitled to temporary and permanent injunction restraining said defendant from disposing of said property or from secreting or disposing of the rentals therefrom, and for receiver to take charge of said property. That by reason of the premises plaintiffs have suffered damages in the sum of $12,000.00.

"The said real property is incapable of partition and plaintiffs desire a partition to be made thereof and to that end that the rights of the respective parties be fixed and determined and that the property be ordered sold and the proceeds applied first to the reimbursement of the sum so advanced by these plaintiffs and to plaintiffs' portion of all proceeds from said property and its rentals, together with interest thereon from such date until paid, at the rate of 8% per annum, and the balance to any unpaid portion of the purchase money to said Louis G. Phelps, and the balance then divided one-half to plaintiffs and one-half to defendant."

Plaintiffs prayed for an adjudication of the rights and titles of the parties in the property and to the proceeds arising from the rents and revenues thereof; "that the liens of plaintiffs upon said property and proceeds be established, and that said property be ordered *sold and partitioned after applying the proceeds thereof to the reimbursement of plaintiffs for the amounts advanced by plaintiffs and plaintiffs' portion of all proceeds, rentals and other uses of said property*, together with interest thereon from date of such advancements and receipts at the rate of 8% per annum, *and the balance then paid to discharge the unpaid purchase money*, and the balance to be divided between the parties hereto equally * * * and for foreclosure of liens, and establishment of other equities, and for such other and further relief, general and special, to which plaintiffs, or either of them, may be entitled in law and in equity." (Italics ours.)

Defendant answered by general denial and specially pleading that the $9,750 advanced to him by plaintiff, Mary Robbins, was advanced to him and his wife, who was a favorite niece of Mrs. Robbins, as a gift, with the understanding that it was to be used in part payment in the purchase of the property described in plaintiffs' petition. He specially denied that there was any understanding or agreement between the parties that plaintiff was to have any interest in the property. He further alleged that as a mark of his appreciation of the gift, he voluntarily, without any agreement or compulsion, told plaintiff that he would pay over to her one-half of the net income to be derived from the property so long as plaintiff should live, and that plaintiff agreed to such arrangement; that it was agreed between the parties that plaintiff should have no right or interest in or to the property except to one-half of the net income therefrom; that on such understanding and agreement the property was purchased and the deed taken in defendant's name, as it was understood and agreed by the parties it should be; that in accordance with such agreement he paid plaintiff, Mrs. Robbins, $302.50, same being one-half of the net proceeds received from the property up to that time, and that he had received no net proceeds since the payment made; that with the knowledge and acquiescence of the plaintiffs he expended about $4,000 of his own funds in furnishing the apartments in order to make them rentable.

The cause was tried before a jury upon one issue only, which the court submitted without objection from either party, as follows: "Was it understood and agreed between Mrs. Robbins and R. L. Wynne at the time Mrs. Robbins delivered her check for $9,750.00 to Wynne, that Mrs. Robbins was to be the owner of one-half interest in the property being purchased from Phelps?"

To the inquiry submitted, the jury answered: "It was not."

No request was made by either party for the submission of any other issue.

Upon the verdict of the jury the court rendered judgment that the plaintiffs take nothing by their suit and that the defendant go hence without day, and that he recover his costs against plaintiffs. From such judgment the plaintiffs have appealed.

By appellants' propositions 1 to 4, inclusive, it is substantially insisted (1) that the undisputed evidence shows that Mrs. Robbins delivered to appellee Wynne the $9,750 under an agreement that it would be used in the purchase of the property in controversy, to be owned by Mrs. Robbins and Wynne equally, and (2) that the finding of the jury in answer to the only issue submitted is so against the overwhelming weight of the evidence as to be clearly wrong.

█ We overrule appellants' contention. There was ample evidence to support the finding of the jury. Appellee was called as a witness by the plaintiffs, and, upon being asked if in his answer filed in the case it was not stated that "it was expressly understood and agreed that plaintiff Mrs. Robbins should have no right or interest whatever in or to said property, and that the only interest of any kind which plaintiff should have in said property was her one-half of the net profits, if any, derived from the operation thereof," he replied that it was so stated and that such statement was true.

He testified that in 1922 he filed an application with the Houston Pilots Association to be appointed a pilot; that such application lay on file until just before Christmas, 1925, and Mrs. Robbins asked him about his chances for appointment, and he told her that one requirement of the association was that he had to own property in Houston and live there, and that he had no property there and did not live there; that Mrs. Robbins said: "If that is all, I will give you some property in Houston," that she would furnish the money to buy the property. Mrs. Wynne, the wife of appellee, is a niece of Mrs. Robbins.

Testifying further, appellee said: "So far as my information goes the relationship between Mrs. Robbins on the one hand and Mrs. Wiedoff (mother of Mrs. Wynne) and her three daughters on the other, was very close and affectionate as far back as 1916. Mrs. Robbins's relationship with Mrs. Wynne appeared to be closer than it was with her other nieces. Mrs. Robbins rather accepted Mrs. Wynne as her daughter. Mrs. Wynne had her meals with Mrs. Robbins and Mrs. Wynne owned a car at the time and she took Mrs. Robbins riding every day and the relationship between them was more like mother and daughter than anything else. In fact, Mrs. Wynne was with Mrs. Robbins as much, if not more, than she was with her own mother. That relationship continued up until they made that trip to New York but it did not exist after that time. After that trip to New York the relations between Mrs. Robbins and Mrs. Wynne were very strained. Mrs. Wynne was not on friendly relations with Mrs. Robbins, she wanted to be friendly but Mrs. Robbins would not have it, she had fallen out with Mrs. Wynne in New York. Mrs. Robbins later fell out with her own sister over this former relation with Mrs. Wynne. The bitterness, or lack of affection, which arose between Mrs. Robbins and Mrs. Wynne did not extend to myself in the same degree. As well as I could judge, Mrs. Robbins did not like me as well as she did before. While she still liked me and treated me cordially, I don't think she liked me as well as she did before she fell out with Mrs. Wynne."

Again: "When Mrs. Robbins was discussing this matter in regard to my becoming a member of the Houston Pilots Association she said that it was too bad that I couldn't get in and that she thought I ought to be in the Association, and if that was all that was holding me back she would fix it up for me and she would buy me this property in Houston. At the time of that transaction Mrs. Robbins did not say anything to me about her having a half interest in some property with me. We did not have any agreement about that at that time. We never did at that time, or at any time thereafter, have any agreement concerning the title to that property, she had no interest in it and didn't want any."

Again: "There never was anything said by Mrs. Robbins to me, or by me to Mrs. Robbins, about taking the deed to this property in our joint names, that is, in the name of Mrs. Robbins and myself. She did not ask for that and did not want it at all. She did not want the property at all until just before this suit was brought, then she asked for it. I never heard of a desire of that kind on her part, or a request of that kind from her, until just before this suit was filed."

Again: "I told Mrs. Robbins that I would give her half of the profit that the place made. I told her that just about the time she gave me the money; she agreed to that, but she said she did not ask it but if I wanted to do it it would be all right."

He testified that Mrs. Robbins had no interest in this property; that he "never knew or suspected that Mrs. Robbins was claiming any title to the property until just before this suit was filed."

The property was purchased in 1925. Appellee testified that in a conversation in July, 1928, between Mrs. Robbins and himself, Mrs. Robbins asked him to give her a half interest in the property or give her back the money she had let him have with which to purchase it; that he told her that he could not do that, because he did not have the money.

Mrs. Wiedoff, sister of Mrs. Robbins and the mother of Mrs. Wynne, testified that she talked with Mrs. Robbins about the money she gave to R. L. Wynne in 1925, and that

Mrs. Robbins told her that she gave the money to Wynne to buy a home in Houston; that they talked about the property involved in this suit, and Mrs. Robbins said she had given Wynne the money to buy the property. Being asked, substantially, whether or not Mrs. Robbins had told her that she knew about the deed to the property being in Wynne, Mrs. Wiedoff said: "Sure, it was discussed numerous times. It was discussed that she gave Captain Wynne this money to buy the place in Houston so he could be a pilot, because she thought he was entitled to something higher, because he was a man who knew how to take care of it and she wanted to see him and his wife prosperous."

Mrs. Ada Wynne, wife of appellee, testified that she heard Mrs. Robbins say that she had given Captain Wynne the money.

It follows from what has been said that the judgment must be affirmed, unless it be made to appear that some error was committed in the trial of the cause which probably influenced the jury in answering the sole issue submitted. We shall therefore proceed to a consideration of the several matters complained of by appellants as constituting reversible error.

■ On cross-examination counsel for appellee asked appellant whether or not appellee had offered to convey the property to her if she would pay him $8,000, and said that he would be glad to take that sum in settlement and get out of the case; and further asking appellant if Mr. Stewart, appellants' counsel, did not tell her that Wynne would take $8,000 for his interest in the property if appellant considered that she owned an interest therein, and then asking her if she would give appellee $8,000 for a deed to what she claimed was his interest in the property.

Appellants assign such inquiries as prejudicial and reversible error, as tending to make the jury believe that appellants were not willing to consider a reasonable adjustment and settlement of the controversy.

We overrule appellants' contention. Mrs. Robbins, on direct examination, had testified that appellee in July of 1928, just before the suit was filed, was asked by her if he would not sell her his interest in the property, and that in reply appellee proposed to sell the property for $12,250, and later told her that he would take less than $16,000 for it. As tending to impeach the testimony of appellant that appellee had demanded $16,000 as the price for which he would sell appellant the property, appellee, on cross-examination, made the inquiries complained of, and the witness, in effect, replied thereto that she did not remember, that her counsel had told her of appellee's offer to take $8,000 for the property.

■ The matter complained of furnishes no grounds for a reversal of the judgment. No objection was made by appellant to the questions propounded, and she should not, for the first time in her motion for new trial, be heard to complain about them. Besides, we think the inquiries were admissible as above indicated.

■ After several attempts to frame an inquiry satisfactory to and to meet objections of counsel for appellant as to what recovery she wanted, whether for the return of the money she had advanced to Wynne, or for one-half interest in the property, appellee's counsel asked appellant the following question: "I was asking you to tell the jury whether your claim now is that you want half of the property, or that you want a judgment against Captain Wynne for the money?"

In response to such inquiry, appellant said: "I don't know what I want, but I do know I want Captain Wynne to give me my money back."

Appellant made the following objection to the question: "We object on the ground that the court pleadings must be in writing, second, parties cannot in open court give away their rights without knowing what they are or the legal effect of what the answer would be. It calls for a legal conclusion on the part of the witness. I object further on the ground that under the statutes of the State of Texas, an alternative pleading is permitted and we have plead in the alternative, and that alternative dispute is one to be determined by the jury and not by a married woman in the witness box, and we reserve a bill of exception to the violation of the rule."

The court overruled the objection and the witness answered as above shown.

Counsel for appellee continued his effort, by questions in various forms, to get from appellant a positive answer as to which she wanted, half of the property or the money, all of which questions met with objections by counsel for appellant. Such objections were overruled by the court, and the witness made the following replies:

"I don't want the property and the money too. If I was a partner in the property I would like to keep the property, but when I found I wasn't interested, I would like a fair deal. I just want what is right."

"I don't know how to answer your question in regard to whether I understand that I cannot have the property and, in addition, have a judgment against Capt. Wynne for the ninety-seven hundred and fifty dollars. All I can say is that I just want what is right. Of course, I want the property because I thought I had a half interest in it. I never asked Capt. Wynne for any revenue because I was satisfied that I owned it. I can't answer whether or not that is the proposition I am suing for. I went and laid the whole case before Mr. Stewart and turned it over to him because I know nothing about the law. Inasmuch as I am not a partner in the property I want a fair deal and that is all I want.

Whatever is right and what I should have, that is what I want."

We think appellee was entitled to have appellant state positively what she was demanding as her right under her agreement with Capt. Wynne at the time the money was advanced. She had testified on direct examination that Capt. Wynne had agreed to purchase the property and have it conveyed to him and her jointly, each to own an undivided one-half thereof. Appellee testified that the money advanced was a gift and that no such agreement or understanding as testified about by appellant was made or had. Under such circumstances, counsel for appellee had the right to cross-question appellant in such manner as to draw from her her understanding of the agreement between the parties. If the money advanced was either a gift or a loan, appellant would have neither an interest in, nor a lien upon, the property to secure repayment to her of the money advanced, in the absence of an agreement for such lien.

The testimony of the witness Mrs. Wiedoff, admitted over the objection of appellant, to the effect that she had talked with appellant about the money she advanced to Capt. Wynne and that appellant told her that she gave the money to Wynne to buy the property which we have above stated, was clearly admissible as tending to show that appellant understood that the property was to be purchased for Wynne and not for appellant and him jointly. Appellant's complaint, therefore, of the admission of such testimony is overruled.

We have examined and considered the contentions made by appellant by her propositions 11, 13, 16, 17, and 18, the three last named complaining of argument of appellee's counsel, and we hold that they present no reversible error. We therefore overrule appellants' complaints made thereby without discussing them in detail.

On cross-examination Mrs. Ada Wynne testified that she was not present at any conversation between appellant and appellee prior to or at the time appellee purchased the property, or when appellant gave the check to appellee. She was then asked by counsel for appellee: "Do you know of your own knowledge anything of the agreement, if any, Capt. Wynne and Mrs. Robbins had concerning this property * * *?" Appellant objected to any answer the witness might make to such question, upon the ground that she had already testified that she was not present at the time of the purchase. Such objection was overruled, and the witness answered: "I know of no agreement, it was a gift." The witness having testified, in effect, that she was not present at the time of the negotiations inquired about, we think the jury could but have understood that she meant to say that she knew of no agreement that it was to be a gift. In view of the fact that the

witness had previously unequivocally stated that she was not present at *any conversation* between appellant and appellee concerning the purchase of the property, or the advancement by appellant to appellee of the money in question, we do not think the answer given, of which complaint is made, could have reasonably influenced the jury in arriving at their verdict.

In argument, counsel for appellee stated to the jury substantially that he did not put Mrs. Howard, a sister of appellee's wife, and a niece of appellant, on the stand because Mrs. Howard had been a recent recipient of appellant's bounty, and that Mrs. Howard had told him that she therefore did not wish to testify in the case.

Appellant objected to such statement as being improper and outside of the record, whereupon appellee's counsel, immediately and before any ruling of the court, stated that he had not intended going out of the record, and requested the jury not to consider his statement, and also requested the court to instruct the jury not to consider such statement for any purpose. The court thereupon gave the instruction requested.

By the testimony of appellee, his wife, Mrs. Taylor, a sister of Mrs. Wynne, and her husband, and Mrs. Wiedoff, appellee showed or attempted to show that at the time of the purchase of the property in controversy and prior thereto, and for some time thereafter, affectionate relations existed between appellant and all of her relatives, and that on or about July, 1926, appellant fell out with the wife of appellee and that since that time there had existed strained relations between appellant and the witnesses named; that appellant became embittered against the whole family, including appellee Wynne, except Mrs. Howard.

It is apparent that by the argument complained of, counsel who made it, who had used all members of the family except Mrs. Howard to show that strained relations existed between appellant and the family, sought to show why he did not call Mrs. Howard to testify. That the argument was improper cannot be reasonably questioned; indeed, counsel who made it so concluded and asked the jury not to consider the same for any purpose, and asked the court to so instruct the jury and the court upon such request so instructed the jury. We do not think under the circumstances shown that the argument was reasonably calculated to work prejudice to appellant. Whether such argument was reasonably calculated to prejudice the jury is left largely to the discretion of the trial court in passing on the motion for new trial, and when, as in this case, the trial judge has exercised such discretion and overruled the motion, we are not prepared to hold, under the circumstances shown, that such discretion was abused. It is only when from the record on appeal it is clear that argument in viola-

tion of the rule above stated is reasonably calculated to prejudice the rights of the complainant that an appellate court is authorized to overrule the discretion exercised by the trial court in overruling the complaint.

The opinion by the Court of Civil Appeals in the case of Wichita Falls Ry. Co. v. Emberlin, 274 S. W. 991, relied upon by appellants in support of the contention, was reversed by the Supreme Court upon the very point for which it is cited by appellants. Emberlin v. Wichita Falls Ry. Co., 284 S. W. 539. In reversing such opinion, the court said:

"The question as to whether such argument was calculated to prejudice is left to the reasonable discretion of the trial court in passing upon the motion, and when, in the exercise of such discretion, the trial court has determined this question, an appellate court is not warranted in setting aside its holding. It is only when *from the record on appeal, it is clear* that argument in violation of this rule was calculated to prejudice the rights of the party complaining that an appellate court is authorized to overrule a contrary holding by the trial court on this question. Unless it *clearly appears* that the trial court has *abused its discretion*, its holding must stand. * * * We are of opinion that, under all the facts and circumstances shown by the record in this case, it is not clear that the argument complained of was calculated to prejudice the rights of defendants in error, and that, therefore, the trial court in holding that the argument was not prejudicial was acting within its reasonable discretion."

Having reached the conclusions above expressed, it becomes our duty to affirm the judgment, and it is accordingly so done.

It is not to be understood, however, that this opinion or the judgment affirmed is an adjudication of the rights of appellant to one-half of the net profits, if any, which have arisen or which might arise in the future from the use of the property during the life of appellant.

Affirmed.