## LAMAR LIFE INS. CO. v. BAUER.
## No. 7947.

Court of Civil Appeals of Texas. Austin.
March 28, 1934.

Lawrence Bruhl, of Llano, and Seay, Seay, Malone & Lipscomb, of Dallas, for appellant.

Wilburn Oatman, of Llano, for appellee.

BLAIR, Justice.

Appellant, the Lamar Life Insurance Company, sued appellee, Mrs. Bertha Bauer, to cancel two policies of life insurance each for $1,000, issued by appellant upon the life of appellee's husband, John William Bauer, and payable to appellee as beneficiary, alleging that the policies provided that if within two years from their date the insured met his death by suicide, appellant would be liable only for the return of the premiums paid; and that within the two-year period the insured met his death by suicide. Appellant tendered into court the premiums paid on the policies. Appellee answered, denying suicide, alleging that the insured met his death as the result of an accidental gunshot wound; and by way of cross-action pleaded the execution and delivery of the insurance policies, and prayed for judgment for their face value, with interest and statutory penalty and attorney's fees. In answer to the sole issue submitted, the jury found that the insured did not meet his death by suicide; and judgment was accordingly rendered for appellee for $2,000, and costs of suit; hence this appeal.

Appellant brings two questions for determination: (1) That the clear and convincing evidence showed that the insured committed suicide, and that the verdict of the jury was, therefore, contrary to the overwhelming preponderance of the testimony, and should be set aside and the cause remanded for a new trial; and (2) that the judgment should be reversed and the cause remanded because of the improper argument of appellee's counsel to the jury.

We have reached the conclusion that the judgment must be reversed, because of improper argument of appellee's counsel to the jury; and we pretermit a detailed discussion of the evidence. Suffice it to say that the sole issue in the case was whether the insured met his death by suicide. The evidence was wholly circumstantial on the issue, and

in view of the presumption against suicide, the evidence was sufficient to support the verdict. The deceased was in good health. His financial condition was good. He had no family troubles of any kind. He was a man of cheerful, jovial, and happy nature, in his sixties, and interested in the public affairs of his community, his church, and his lodge. He did his usual work the day before his death; rising as usual about 4 o'clock on the morning of his death, he went to his garage near his home where a target gun was kept in the scabbard, swung to a saddle belonging to his son. At this hour of the morning, he often took the target gun along as he went in the pasture to drive up the stock. The saddle hung on the wall about three feet from the automobile in the garage. Insured was found dead on the running board of the automobile, leaning somewhat on the gun, which had an empty cartridge; and deceased had a bullet wound in his right temple, and the bullet was found just under the skin near the left ear. The son kept the gun loaded, and on his saddle, and used same while riding over the ranch of deceased. The gun was easy of trigger, because of wear and long use. On two occasions it had cocked itself by being replaced in the scabbard; and on one occasion while in the scabbard the jar of the horse under the saddle caused it to be discharged, and shot the horse in the leg. Near the point where the saddle hung in the garage were nail kegs, an old vise, a box of rasps, files, and horseshoes, a three-legged horseshoeing foot rest, and other junk, between which and the running board of the automobile deceased had to pass in going to and extracting the gun from the scabbard on the saddle; and deceased met his death on a dark morning, about 4:30 or 5 o'clock, on or near the running board of the car where he was found dead, but still warm. Blood was spattered on the front fender and the running board back to where deceased was found. He was thought to have lived some thirty minutes after receiving his wound. The coroner investigated and returned a verdict of suicide. One witness testified that deceased told him that there should be some way to dispose of men who had reached his age. Shortly before his death deceased condemned the action of a neighbor, who committed suicide, as cowardly. Manifestly, the issue of death by suicide was for the jury.

■ In his closing argument counsel for appellee made the following argument to the jury: "These good people have worked hard to save and pay the premiums on these two thousand dollar policies, and have paid them; and now this big corporation comes into this court and asks you to pinch off a little two hundred and forty-six dollars and give it to this widow, and not only cheat her out of the two thousand dollars but humiliate and disgrace them by having you find that this man committed suicide. Are you going to take away from this widow and nine children the two thousand dollars which this insurance company honestly owes them and humiliate and disgrace them by finding that John Bauer committed suicide?"

Appellant objected to the argument, on the ground that it was inflammatory and prejudicial. The trial court refused the request of appellant to instruct the jury to disregard the remarks of counsel. Arguments of this character have been uniformly held to constitute reversible error. The facts that appellee and her husband had worked hard to pay the premiums, and that appellant was "a big corporation," were not involved and were not pertinent to the sole issue of suicide. Appellant had the right to litigate the suicide issue. There was no evidence that appellant wanted "to cheat her (appellee) out of the two thousand dollars." Nor was there any evidence that appellant was trying to bring humiliation and disgrace upon appellee, by showing that deceased met his death by suicide. If deceased did commit suicide, appellant did not cause it; and it was manifestly inflammatory and prejudicial for counsel to charge appellant with seeking to humiliate and disgrace appellee by attempting to show that her husband committed suicide. The evidence was sharply conflicting on the issue. Galveston, H. & S. A. Ry. Co. v. Cooper, 70 Tex. 67, 8 S. W. 68; Galveston, H. & S. A. Ry. Co. v. Kutac, 72 Tex. 643, 11 S. W. 127; Texas Cent. R. Co. v. Parker, 33 Tex. Civ. App. 514, 77 S. W. 42; Texas & St. L. R. Co. v. Jarrell, 60 Tex. 267; Miller v. Burgess (Tex. Civ. App.) 136 S. W. 1174; Home Life & Accident Ins. Co. v. Jordan (Tex. Civ. App.) 231 S. W. 802; Texas Central R. Co. v. Pledger, 36 Tex. Civ. App. 248, 81 S. W. 755; Clements v. Wright (Tex. Civ. App.) 47 S.W.(2d) 652.

■ The contention of appellee that no harmful effect was shown to have resulted from the argument is not sustained. The rule is settled that if, under all the circumstances, there is any reasonable doubt of its harmful effect, the improper argument constitutes ground for the reversal of the judgment. Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765; Hubb Diggs Co. v. Bell (Tex. Civ.

App.) 297 S. W. 682; Floyd v. Fidelity Union Co. (Tex. Com. App.) 24 S.W.(2d) 363; Gulf, C. & S. F. Ry. Co. v. Carson (Tex. Civ. App.) 63 S.W.(2d) 1096.

The issue of whether deceased committed suicide depended solely upon circumstantial evidence, and it is impossible to determine whether the improper argument to the effect· that appellant was seeking to bring humiliation and disgrace upon appellee by showing that her husband committed suicide, influenced the jury in finding that deceased did not suicide. It is manifest that the jury would not want to bring shame and disgrace upon appellee, and in argument counsel in effect told the jury that if they found deceased committed suicide, such finding would humiliate and disgrace her. Hunstock v. Roberts (Tex. Civ. App.) 65 S. W. 675.

While arguing the case to the jury, counsel for appellee placed the gun in ,the scabbard and in doing so cocked the gun; then he withdrew it and showed it to the jury. Appellant contends that: "Where the sole issue before the jury for determination was whether the death in question was due to suicide or to accident, and appellee's contention and theory was that the gun with which deceased was shot had on previous occasions cocked itself upon being placed in the scabbard, it was reversible error for appellee's counsel, in his argument to the jury, to take the gun, and, by placing it in a different condition from that which the evidence showed it had been in on the previous occasions about which testimony had been offered, to physically shove it into the scabbard in such changed condition and thus cock it, and then withdraw it and exhibit it to the jury as being cocked."

The bill of exception shows that the gun had been slightly unbreached or unlocked by counsel, and was in a different condition from that in which the witness said he placed it in the scabbard. It is usually held that where experiments or demonstrations are offered in evidence, the same should be made under substantially similar conditions as they existed on the previous occasion about which the evidence had been offered. We would not hold, however, that this demonstration standing alone would be sufficient to reverse the case. Appellant made several demonstrations under admitted different conditions before the jury, at which time the gun did not cock; and it is extremely doubtful whether the jury were in the least influenced by the fact that the gun cocked when being placed in the scabbard in an admittedly different condition than on the occasions inquired about. The trial court instructed the jury to disregard the demonstration made by counsel, and no doubt it will not occur on another trial.

The judgment of the trial court is reversed, and the cause remanded.

Reversed and remanded.