## TEXAS EMPLOYERS' INS. ASS'N v. DRAYTON.

### No. 5559.

Court of Civil Appeals of Texas. Amarillo.

June 28, 1943.

Rehearing Denied Sept. 6, 1943.

784

Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellant.

Caldwell, Baker & Jordan, of Dallas, Simpson, Dorenfield & Fullingim, of Amarillo, and Loyd R. Kennedy, of Morton, for appellee.

FOLLEY, Justice.

This is a compensation suit in which the appellee, A. M. Drayton, is the claimant, Agey Drilling Company is the employer, and the appellant, Texas Employers' Insurance Association, is the insurance carrier. Appellee sued for total and permanent incapacity resulting from an injury sustained on August 29, 1941, in the course of his employment for such employer on an oil well drilling rig in Cochran County. In a trial before a jury the appellee recovered for total and permanent disability.

The chief complaint of the appellant is based upon alleged improper argument to the jury by counsel for appellee. The argument complained of was preserved in appellant's motion for a new trial and by eleven bills of exceptions, each containing portions of such argument. The arguments were largely of the same character, and appellant insists that they constituted a studied and deliberate attempt on the part of appellee's counsel to prejudice the jury against appellant by criticizing and abusing appellant and its counsel for introducing in evidence, for impeachment purposes, the record of appellee's conviction of a felony in Oklahoma.

In order that this opinion may be intelligible, it becomes necessary, in our judgment, that we quote some of the argument about which the complaint is made. From the eleven bills of exceptions we shall select the argument contained in only five of them, as representative and characteristic of the whole, and which includes statements that appear the most harmful. Before doing so, however, we shall present the factual background for such argument.

In the trial of the case, counsel for appellee, in the absence of the jury, made an oral motion for the trial court to instruct counsel for appellant not to introduce, nor attempt to introduce, any evidence relative to the criminal record of the appellee. In connection with such motion appellee's counsel stated that appellee had been convicted of highway robbery in the State of Oklahoma and sentenced to the penitentiary of that State; that he had also been indicted in Hutchinson County, Texas for the offense of rape, tried, and convicted; that the latter case was reversed by the Court of Criminal Appeals and later the indictment against him was dismissed. Testimony was introduced before the court, in the absence of the jury, showing that on September 13, 1922, appellee was convicted in Osage County, Oklahoma of the offense of conjoint robbery and his punishment assessed at twenty years in the Oklahoma penitentiary. It was further shown that appellee served about nine years of the sentence. He was paroled in 1931 and, under such parole, was required to report to the parole officer every thirty' days, until he was pardoned in 1936. There was also introduced before the court a certified copy of the judgment of the District Court of Hutchinson County, dated January 30, 1939, showing that on such date the appellee was convicted of rape and his punishment assessed at confinement in the Texas penitentiary for five years. The latter judgment was admittedly reversed by the Court of Criminal Appeals. Drayton v. State, 138 Tex.Cr.R. 264, 135 S.W.2d 703. The testimony as to the subsequent dismissal of the rape case was obviously hearsay. Appellee testified that the judge of the Hutchinson County District Court had told him

the case had been dismissed. Counsel for appellant testified that an investigation of the records of the case had been made by his firm and that, although he had not read the order of dismissal, it was his information that the case had been dismissed. Under the record thus made, the trial court ruled that the evidence of the Oklahoma conviction would be admitted before the jury, but that evidence concerning the Texas conviction would not be admitted. Thereafter, for the purpose of impeachment, appellant introduced in the presence of the jury the evidence relative to the Oklahoma robbery case. In the court's charge the jury was instructed that it might not consider such evidence for any purpose whatsoever except as it might or might not affect the credibility of appellee as a witness.

It should also be stated that the credibility of appellee as a witness became very material in the trial of this case. The evidence was closely contested upon the issues as to whether the appellee's total incapacity if any, continued for any substantial length of time, whether his incapacity entirely terminated or, if it did not, whether any remaining incapacity became only partial. The medical testimony would have supported findings establishing the theory of either party on those issues. Needless to say, the appellee's testimony was exceedingly favorable to his theory of the case.

Following the opening argument of J. B. Dooley, counsel for appellant, Russell Baker, counsel for appellee, made the following argument to the jury: "I think gentlemen, if it had not been for one circumstance in this case, I would not be attempting to make an argument. Of course, lawyers like to talk and I guess I am not an exception, but I think I can leave it to Mr. Kennedy entirely, but, gentlemen, I have been boiling over for two days and I just can't resist the opportunuity to talk a little bit about it. I wonder if you gentlemen have ever stopped to consider what kind of a country this would be to live in, in a country of Christianity and Democracy, if we all went around preaching the text that Mr. Dooley does. Did you ever stop for a minute to think about it. As I stand here and call your attention to that, gentlemen, I have in mind the words of a Savior there on the cross when in his pain and anguish with his head lifted towards his father in Heaven, he looked up and said 'Father, forgive them, for they know not what they do.' You know that text. You have heard that text from the time you were a small boy; but (facing Mr. Dooley) maybe your client hasn't. You know it has been said gentlemen that a man can't come back and here is the reason they do. You have heard the reason in this court room right here this week. If you have ever strayed from the straight and narrow, even though you repent and go along and attempt to do what is right, and then some lawyers come along and stamp their foot on you and kick you back in the ditch. That is not the sermon on the Mount, and that is not the doctrine of Democracy in this country, is it? Twenty long years ago this insurance company goes back to dig into your past, Mr. Drayton, here, because it affects your credibility as a witness, or because Mr. Dooley's client is trying to save the money that it owes. I hope, Mr. Drayton, whatever may be the outcome of this trial, that you won't take it as a kick and you will go on just like you have, and have the courage to look these men of the jury in the face wherever you may meet them in the future. I wonder, gentlemen, I wonder if there is a juror, a man on this jury, who conscientiously believes that they offered that testimony here purely for the purpose of affecting his credibility; or, gentlemen, do you believe that it was offered here in an effort to inflame and prejudice your minds?"

An objection to such argument was made by appellant's counsel on the ground that Mr. Baker was attempting to criticize appellant's counsel for introducing admissible and legitimate evidence, evidence which it was the duty of counsel to offer in the proper representation of his client, and the court was requested to instruct the jury not to consider the argument. The court thereupon instructed the jury not to consider for any purpose "that portion of it that deals with the proposition of inflaming your minds * * *."

Thereafter, Mr. Baker further stated to the jury: "Isn't it peculiar, gentlemen, that this insurance company has dug around and traced him back twenty years and shown up these two things? Isn't it peculiar that Mr. Dooley had to come in here with this one thing that he could say that he caught him lying about? Now, what else did he point out to you in his life, in his trial that he lied about? Don't you know if it was as bad or if he is as bad as they picture him here that it would crop out somewhere and not on something that happened

a way back yonder? Don't you know, if he was a liar like they say he is, this lawyer over here and that lawyer would have dug more than that out of it, on his weight, and that doesn't mean Drayton is wrong. Maybe the doctor was wrong. All right. Yet, they are willing to go back twenty years, dig up a man's past and bring it in here, throw it in his face and then ask you gentlemen out here * * *."

An objection was made to such argument for the same reasons, subsantially, as stated in the objection to the first argument, and the court was requested to instruct the jury not to consider the same. Thereupon, counsel for appellee stated that he would withdraw the argument and that he was not criticizing counsel nor casting any reflections upon them. The court also instructed the jury not to consider that argument.

Thereafter, Loyd Kennedy, also counsel for appellee, in his argument to the jury, stated: "What does Mr. Dooley tell you? I am too young to criticize him. I am a fledgling at the law. He is old enough for my father. It would ill behoove me to criticize his method of trying a law suit in this or any other courthouse, but I have my ideas, gentlemen, about what is fair. I have my ideas that I learned at my Mother's knee about what is fair dealing and what is charitable dealing. But what did he say to you in his opening argument that 'I may get to the facts if I have time,' but in substance he said to you 'My purpose here is to reach back twenty years from Osage County, Oklahoma,' from whence several of you came, a good state, 'and get a man and re-indict him, try him and successfully convict him in Cochran County after twenty years."

An objection was made to such argument on the ground that it was highly improper and inflammatory, and the court was asked to instruct the jury not to consider · it. Thereupon, counsel for appellee withdrew the argument and the court instructed the jury not to consider it.

In the same argument Mr. Kennedy thereafter further stated to the jury: "Gentlemen of the Jury, one of the unfairest things in society, as I see it and as we have constructed it, is the attitude of the rank and file, even maybe I, and I have been in the prosecutor's seat, is the attitude that society takes towards the criminal when he has paid his debt under the law of Oklahoma, or Texas, or any other State. They told him to do twenty years—he introduced this, I think that is in the record—They told

him to do twenty years. He goes out and does nine of it and they, the people of Oklahoma, under the law give him a full pardon, in substance telling him 'Go your way now. You have paid your debt to the people of Oklahoma, and sin no more.' But it is left for a Texas Lawyer to run back and get him and bring him into the courthouse of Cochran County and impeach his credibility. What does that mean? Impeach his credibility. What does that mean? In plain Cochran County terms, it means to say that by reason of the fact that he was indicted, even though he did not do half of the term that he got, that he cannot be believed and is lying on the witness stand. Society gets ashamed of what it has done, indicted him, convicted him and sent him to the penitentiary, and they let him out on a pardon and they say 'Go your way and sin no more,' and then gets ashamed of what it has done, and won't give him a job, and he goes from place to place trying to rehabilitate himself, and he finally when he gets his back caved in they run back twenty years and bring him into the courthouse and put their foot on his neck and say 'You have got by so far but no longer. You will have to leave Cochran County and Texas.' Society ought to be ashamed of what it has done. Society permits, and it is somewhat surprising to me, if I may say it, that it is left for a Texas corporation counsel to bring it back to light in Texas. I say to you that he made the biggest mistake he ever made in the law suit when—."

The same objection was again made to such argument, the attorney withdrew it, and the court instructed the ·jury not to consider it.

After the argument above quoted, Mr. Kennedy also said to the jury: "Gentlemen, can a man come back? Can a man in the United States, Oklahoma, or Texas, or anywhere, come back? Those Jews in Ancient Jerusalem said 'Give us Barabbas, the thief! Cut the head off of the Man of Sorrows, crucify him—but give us Barabbas!' That is what they wanted."

No objection was made to that argument at the time it was made to the jury, but the same was incorporated in appellant's motion for a new trial. There were six other excerpts from other arguments of appellee's counsel, all of which were duly preserved for our consideration in bills of exceptions and in the motion for a new trial. No objections were made to four of the arguments at the time they were made. Two of

them were objected to, and the objections were sustained by the court. In one instance the argument was also withdrawn by appellee's counsel.

The trial court qualified each of appellant's bills of exceptions by stating that appellant did not move the court to discharge the jury or declare a mistrial and, further, that the argument complained of was in reply to the argument of Mr. Dooley. Appellant, by supplemental transcript, has brought up the original bills and their qualifications as approved by the trial judge. From those original instruments it appears that the qualifications, as originally prepared for the approval of the court, stated that the respective arguments were each "invited and provoked" by the argument of Mr. Dooley. The words "invited and provoked" were in each instance marked out by pen or typewriter, and, as finally approved, the court merely certified that such arguments were in "reply" to the argument of Mr. Dooley. Attached to Bill of Exception No. 3, which contains the argument first above quoted, as a part of the court's qualification there appears all of the argument of Mr. Dooley, comprising twenty-two pages of the transcript , as taken and prepared by the official court reporter. Also attached to the other bills are extensive portions of the argument of Mr. Dooley, which were cited in support of the statement that the argument complained of was in reply to that of Mr. Dooley.

· Appellee insists that appellant is bound by the trial court's statement in the qualification of the respective bills of exceptions that the argument complained of was in reply to the argument of appellant's counsel. He further contends that the argument was permissible as a reasonable deduction and inference  to be derived from the evidence, and insists that the question of its harmful effect was a matter within the discretion of the trial court and that the instructions given by the court were sufficient to remove the vice, if any, contained in the argument.

■ We recognize the general rule that a party who accepts a qualified or modified bill of exceptions is bound by the qualification and may not dispute the facts therein stated. 3 Tex.Jur. 657, Sec. 464; Lowrimore v. Sanders, 129 Tex. 563, 103 S.W.2d 739. However, we think this rule has no application here. From the court's failure to approve the bills in their original form when they contained the words "invited and provoked," it is obvious that the court was not using the word "reply" in its usual sense in the qualifications. Moreover, the trial court set out in each instance the exact language of the argument of appellant's counsel upon which he based his conclusion or statement that the argument complained of was in replication. Under these circumstances, whether or not the argument complained of was in reply to the argument of appellant's counsel becomes a question of law subject to our revision.

■ We have carefully examined the argument of Mr. Dooley and we are convinced that it was warranted by the evidence and by the reasonable deductions allowed to be drawn therefrom. Branton v. Inks, Tex.Civ.App., 149 S.W.2d 667. Such argument is too long to repeat here. In substance, it dwelt at length on the Oklahoma conviction, the gravity of such offense, and its probable effect on the credibility of the appellee as a witness. As typical of the character of the argument, we quote from it as follows: "You have got to consider this man's credibility. You have seen him on the witness stand, and you have seen him sitting here in the court room during this trial and that question is before you, gentlemen, and it is one that has got to be important in your mind, the question of his credibility. Gentlemen, it is at least a fair presumption, isn't it, that a man who would be guilty of robbery is a man of such dishonest character that you can not fairly doubt that he would not hesitate to tell a falsehood, if it served his purpose? He has certainly been guilty of one very serious dishonest act. And so you have that thing in here, that evidence in here bearing on this man's probable honesty or dishonesty, nature and character."

From an analysis of the record before us, we think it is evident that counsel for appellee attempted to improperly prejudice the jury against appellant and its counsel for introducing competent evidence for a legitimate purpose and which counsel was obligated to do in fairly representing appellant. It is true that the court sustained all of the objections made by appellant and in each instance when so requested instructed the jury not to consider the argument. Despite such action by the court, counsel for appellee continued, from time to time, to repeat the same character of argument. In our judgment, the gravamen of the harm in such argument was its continuous repe-

tition, in spite of the court's action in repeatedly sustaining objections to it and instructing the jury not to consider it. In such argument appellee's counsel continuously impugned the motives of appellant and its counsel in offering such impeaching evidence and, in effect, told the jury that such evidence was not offered for the reasons assigned by appellant's counsel and that it should not be governed by the limitations directed by the court in the charge. There was no evidence nor circumstance which would, in the least, warrant such a personal and vicious attack on the appellant or its counsel for the introduction of such evidence, and we think the abuse therefor, as repeated from time to time, constituted an unreasonable and hurtful deduction, inflammatory in nature, and was clearly outside the record.

In the case of McMahan v. City of Abilene, Tex.Civ.App., 8 S.W.2d 554, opposing counsel was severely criticized before the jury for having objected to certain evidence. Objections were made to such argument, and the court, unlike the court's action in the instant case overruled the objections. In discussing the rights of litigants and the duties of their attorneys generally, Chief Justice Hickman, then of the Eastland Court of Civil Appeals, said: "A litigant has the right to object to the introduction of any improper evidence, and it is the duty of an attorney representing his client in the trial of a case to see that only competent evidence is introduced against him. His case should not be prejudiced because he thus discharges his duty to his client. Remarks such as those quoted above, particularly when approved by the court, as they were in this case by refusing appellant's request to instruct the jury not to consider same, have the effect of confirming in the minds of the jury the belief that rules of evidence exist to suppress truth rather than to discover and reveal it. If objections to improper evidence are thus to be commented upon, then in many cases it would be better for attorneys to permit, without objection, the introduction of all sorts of improper evidence against their clients, because such evidence would not have such damaging effect as would the remarks of a prominent attorney for whom the jurors have great respect."

The thought expressed by Judge Hickman in the McMahan case is particularly applicable here, in that appellant's rights should not be prejudiced because its counsel introduces competent evidence for a legitimate purpose; otherwise attorneys under like circumstances would omit the introduction of such evidence in defense of a client because the omission would be less harmful than the unwarranted and inflammatory remarks of opposing counsel if the evidence were offered.

We recognize the rule that counsel for parties have the right to discuss the evidence and draw their own conclusions, deductions, and inferences therefrom and, in doing so, if they stay within the record, even if the inferences thus drawn are erroneous, it is not such error as may not be cured by instructions; but where the inference is unsupported by the record, clearly unjustified, prejudicial, inflammatory, and of a repeated and consistent nature, as in this case, we think it constitutes reversible error regardless of the instructions of the trial court. Teston v. Root, Tex.Civ.App., 95 S.W.2d 524, writ refused; Houston & T. C. R. Co. v. Cheatham, 52 Tex.Civ.App. 1, 113 S.W. 777, writ refused; Pitts v. Wood, Tex.Civ.App., 125 S.W. 954; Smerke v. Office Equipment Co., 138 Tex. 236, 158 S. W.2d 302.

We think the general rule governing such improper conduct was aptly and concisely stated by Justice Sharp in the case of Chapin v. Putnam Supply Co., 124 Tex. 247, 76 S.W.2d 469, 470, in the following language: "It is not the policy of the law to impose the burden of showing harmless error upon the person whose rights have been transgressed. That burden rests upon the person in whose favor the transgression was made. The rule has been announced, and is adhered to by this court, that, when improper argument has been made, the adverse complaining party is entitled to a reversal of the judgment, as a matter of law, if, under all the circumstances there is any reasonable doubt of its harmful effect, or unless it affirmatively appears no prejudice resulted."

In the case of Robbins v. Wynne, Tex.Com.App., 44 S.W.2d 946, 947, 948, counsel for the defendant, in his argument to the jury, made reference to the fact that he did not use a certain witness who was supposed to know some of the facts in controversy, because she had been a recent recipient of plaintiff's bounty and had expressed a desire not to be called to testify. The plaintiff's counsel objected to such argument and defendant's counsel withdrew

the same and requested the court to instruct the jury not to consider it, which the court did. Notwithstanding the efforts of the court and counsel to cure the evil effect of such argument, the Commission of Appeals held that the error was of such character that the court could not say with any degree of certainty that counsel's acknowledgment of his error in the presence of the jury and the court's instruction to disregard it rendered the error harmless. The Court of Civil Appeals in that case, 28 S.W. 2d 225, 229, held that whether such argument was reasonably calculated to prejudice the jury is left largely to the discretion of the trial court and that it is only when it is clear that such argument was reasonably calculated to prejudice the rights of the complainant that an appellate court is authorized to overrule the discretion exercised by the trial court in overruling the complaint. In reversing such holding of the Court of Civil Appeals, Justice Critz, for the Commission of Appeals, said: "We are unable to agree with the Court of Civil Appeals in the above holding. In our opinion, when it becomes an issue of fact as to whether an alleged misconduct actually occurred, and the trial court hears evidence on such question and determines the issue, his finding and judgment should not be disturbed unless palpably wrong. When, as in a case like this, the improper argument and circumstances surrounding it are undisputed, we think the issue of injury is purely a law question. We think, further, that when counsel goes outside the record and gives the jury information that is calculated to injure the other side, it is misconduct which must result in a reversal, unless it clearly and affirmatively appears that no injury has been done. In other words, we hold that the same rule governs in such instances as governs where the jury itself is guilty of misconduct and hears evidence outside the record while it is deliberating on a verdict."

As further applicable to the facts of the instant case, and of our disposition of the same, Justice Critz, in the case of Robbins v. Wynne, also said: "Of course we do not intend to hold that in all cases where improper argument is indulged in a reversal must follow; neither do we intend to say that injury resulting from such improper argument can never be removed by instructions by the court to the jury to disregard such argument, but in a case like this, where the issues are sharply drawn, and counsel goes outside the record and gives the jury hearsay testimony vital to the case, we do not think it can be said that the question of injury is free from doubt, or that the appellate courts are bound by the discretion of the trial court."

■ In view of the continued repetition of the improper argument in this case, despite the trial court's disapproval thereof and instructions in regard thereto, we can not say, under the facts and circumstances before us, that there is no reasonable doubt of the harmful effect of the argument in question or that it affirmatively appears that no prejudice resulted therefrom, and we therefore sustain appellant's contention in this respect. Texas & P. R. Co. v. Jefferson, Tex.Civ.App., 131 S.W.2d 175; McClure v. Fall, Tex.Com.App., 67 S.W.2d 231; Carvajal v. Casanova, Tex.Civ.App., 62 S.W. 428; Woodard v. Texas & P. R. Co., 126 Tex. 30, 86 S.W.2d 38; Lamar Life Ins. Co. v. Bauer, Tex.Civ.App., 70 S. W.2d 600; Metropolitan St. R. Co. v. Roberts, Tex.Civ.App., 142 S.W. 44; Chicago, R. I. & G. R. Co. v. Loftis, Tex.Civ. App., 168 S.W. 403; Blohm v. Krueger, Tex.Civ.App., 297 S.W. 596; Davis v. Hill, Tex.Com.App., 298 S.W. 526; Western Union Tel. Co. v. Wingate, 6 Tex.Civ.App. 394, 25 S.W. 439; Corn v. Crosby County Cattle Co., Tex.Com.App., 25 S.W.2d 290; Gray v. Cheatham, Tex.Civ.App., 52 S.W.2d 762; Western Indemnity Co. v. MacKechnie, Tex.Civ.App., 214 S.W. 456; Smerke v. Office Equipment Co., 138 Tex. 236, 158 S. W.2d 302; Pacific Fire Ins. Co. v. Fain, Tex.Civ.App., 54 S.W.2d 226; Hemsell v. Summers, Tex.Civ.App., 138 S.W.2d 865; Texas Indemnity Ins. Co. v. McCurry, Tex. Com.App., 41 S.W.2d 215, 78 A.L.R. 760; Ivy v. Ivy, 51 Tex.Civ.App. 397, 112 S.W. 110; Missouri, K. & T. Ry. Co. of Texas v. Huggins, Tex.Civ.App., 61 S.W. 976; Franklin v. Tiernan, 62 Tex. 92, 97.

■ The appellant further asserts that the court erred in refusing to admit before the jury the evidence concerning the criminal case in Hutchinson County. In the case of Gulf, C. & S. F. R. Co. v. Johnson, 98 Tex. 76, 81 S.W. 4, on the question of the incompetency of a witness, it was held that not only the judgment of conviction, but also the sentence, must be introduced in order to show a final conviction of a witness. In the case of Kennedy v. International-Great Northern R. Co., Tex.Com.App., 1 S.W.2d 581, will be found a discussion of the rule in regard to impeachment of witnesses under circum-

stances similar to those of the instant case. In analyzing such rule, Justice Critz, in Texas & N. O. R. Co. v. Parry, Tex.Com. App., 12 S.W.2d 997, 1001, said: "The rule is that where the witness has been legally charged by indictment, complaint, or information and complaint, with an offense involving moral turpitude, and has been legally convicted of such offense in a court of competent jurisdiction, or where the witness has been so legally charged with such offense, and presently admits his guilt, then such matters are admissible in evidence touching his credibility as a witness. Kennedy v. International-G. N. R. Co., Tex.Com.App., 1 S.W.2d 581. Otherwise, in the impeachment of a witness, the inquiry should be confined to his general reputation for truth and veracity, and should not be extended to his general moral character."

■ There being no showing of a legal or final conviction of appellee in this case, we must overrule the assignment. Bowles v. Bryan, Tex.Civ.App., 277 S.W. 760; Woodmen of the World v. Dodd, Tex.Civ. App., 134 S.W. 254, writ refused.

Appellant also contends that the court erroneously placed the burden of proof upon it in the issue relative to temporary incapacity. Such issue was as follows: "Do you find from a preponderance of the evidence that said total incapacity to labor, if any, is temporary?"

The appellee pleaded total and permanent incapacity. The appellant's answer contained a general denial and a special plea that appellee's disability was partial rather than total and that any incapacity, whether total or partial, was temporary rather than permanent.

■ We think it is settled that, providing the evidence is sufficient, allegations of total and permanent disability will authorize a recovery for a lesser incapacity, both as to the extent of the disability and its duration. Southern Underwriters v. Boswell, Tex.Civ.App., 158 S.W. 2d 280; Southern Underwriters v. Wolcott, Tex.Civ.App., 110 S.W.2d 251; Traders & General Ins. Co. v. Snow, Tex.Civ. App., 114 S.W.2d 682. The appellee was therefore entitled to recover for any temporary total incapacity supported by the evidence. The issue of temporary total

incapacity was thus a part of his cause of action and in order to recover thereon the burden was upon him to establish it. Since the case of Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314, we think it has been settled that, under circumstances like these, the affirmative submission of such an issue in behalf of the claimant, placing the burden of proof upon him, is adequate and sufficient for both parties, that the burden of proof is not thus misplaced, and that it is not prejudicial to the insurance company for the court to refuse to submit again the same issue in negative form with the burden again upon the claimant. Southern Underwriters v. Samanie, 137 Tex. 531, 155 S.W.2d 359; Southern Underwriters v. Schoolcraft, Tex.Civ.App., 158 S.W.2d 991. The case of Texas Reciprocal Ins. Ass'n v. Stadler, Tex.Com.App., 166 S.W.2d 121, relied upon by the appellant, is not in point. In that case an issue involving the question of independent contractor was submitted in an affirmative manner. It was held that the burden of proof was therein erroneously placed upon the insurance carrier. The distinction to be made in an issue like that and the one here involved is that the claimant therein was not attempting to recover upon such issue, but was duty bound to exclude the question from the case in order to recover at all. Such is not the case here. On the contrary, upon proper findings and evidence, the recovery herein, except for the lump sum settlement feature, might have been as great for temporary total incapacity as it was for permanent total disability. We therefore conclude there was no error in the manner in which the issue was submitted and we overrule the assignment. Federal Underwriters Exchange v. Skinner, Tex.Civ.App., 146 S.W. 2d 325; Southern Underwriters v. Grimes, Tex.Civ.App., 146 S.W.2d 1058; National Indemnity Underwriters of America v. Blevins, Tex.Civ.App., 129 S.W.2d 734; Southern Underwriters v. Weldon, Tex. Civ.App., 142 S.W.2d 574.

The other matters urged by the appellant will likely not arise in the same manner, if at all, upon another trial of this case, and we deem it unnecessary to discuss them.

The judgment will be reversed, and the cause remanded.