**PRICE v. PELTON.**

No. 9599.

Court of Civil Appeals of Texas. Austin.

Jan. 15, 1947.

Wilson & Lear, of San Angelo, by. Geo. T. Wilson, of San Angelo, and Ralph W. Yarborough, of Austin, for appellant.

Clark, Craik, Burns & Weddell and Chester Clark, all of Fort Worth, for appellee.

BAUGH, Justice.

In 1935 one H. F. Harrington obtained a judgment against appellant Price in the District Court of Dallas County for $7,134. Abstract of this judgment was subsequently filed in Runnels County, Texas, where Price was the record owner of an interest in an oil gas lease on lands situated in that county. In September 1943 Harrington assigned said judgment to H. E. Pelton. This suit was brought by Price to cancel said judgment and remove clouds on appellant's leases, on the ground that he had settled same with Pelton for $720, had paid him said sum and then obtained Pelton's written receipt therefor, which had been lost.

Pelton, in addition to other matters not material to this appeal, denied making any such settlement, and by cross-action sought foreclosure of his judgment lien on the leases in question. Trial was to a jury on the single issue of whether Price had paid Pelton $720 in settlement and release of the Harrington judgment. The jury found that he had not. The court rendered judgment that Price take nothing and for foreclosure of Pelton's lien; hence this appeal.

Appellant's first point urged is as follows: "The conduct of the attorney for Pelton in repeatedly asking prejudicial and insulting questions to Price while he was on the witness stand about matters foreign and irrelevant to the matters at issue, and the failure of the trial court to take steps to prevent or stop such prejudicial questions, amounted to a denial to Price of his right to a fair and impartial trial and requires the reversal of the judgment rendered in this case."

The first improper question propounded to appellant on cross-examination, and here complained of was: "Now, you had half a million dollars worth of judgments against you where you had defrauded people?" To which the witness answered, "That is a lie." Whereupon appellant's counsel objected on the ground that other judgments had nothing to do with this case, and requested that counsel be instructed not to use insulting. remarks towards the witness. The trial court then stated, "Let's try the case, Mr. Price, and let's don't say. anything about a lie." Price then apologized to the court, and stated that he had never defrauded anybody in his life. The trial court did not admonish appellee's counsel against asking improper questions. The only judgments pleaded by appellant and properly involved in this suit aggregated $26,034.53, with interest thereon since 1935, held separately in varying amounts by 13 different people, all of which had been settled and released except that of Harrington here involved. There was no evidence that any of them, or any other judgment not included in said aggregate, were the result of any fraud perpetrated by appellant.

Again appellee's counsel, without any predicate therefor, asked appellant: "Didn't you serve three terms in the Federal penitentiary?" To which appellant's counsel objected and the court sustained such objection, but did not instruct nor admonish counsel of the impropriety of such questions. However, the appellant answered, "I have not," and counsel then asked, "How many terms?" In answer to this appellant admitted that he had served one term "for income tax reporting." There upon counsel asked appellant further, "You were arrested in Arizona as a fugitive, weren't you?" To this question the trial court sustained the objection of appellant's counsel

that "We are entitled to a fair trial." A short time later counsel for appellee sought to inject into the trial another asserted judgment against appellant for the sum of $49,000 which had apparently been settled, and which the trial court excluded as inadmissible in the instant case.

Later, after appellant while still a witness had made some improper, inadmissible and scathing remarks about appellee, appellee's counsel asked, "You have been tried for murder, have you not?" to which appellant, apparently before his counsel had opportunity to object, answered, "No, sir, I have not." Whereupon, appellant's counsel stated: "I'm sure counsel knows questions like that in a civil case are not admissible." The court then stated, "I sustain the objection," and appellant's counsel further protested, "The court should limit counsel to the case, rather than questions like that; it has no bearing in this case; we are entitled to be treated fairly"; to which the court made no response. At no time did appellant's counsel ask for a mistrial, nor request the court to instruct the jury not to consider the improper questions, nor did the trial court do so of his own accord or admonish appellee's counsel against asking such improper questions.

■ It is obvious that such questions ,were improper and prejudicial, and the implications and insinuations, not predicated upon any facts adduced in evidence either before or after such interrogations, were calculated and intended to discredit appellant in the minds of the jury. Any attempt to impart to the jury, through statements of counsel in questioning a witness, prejudicial and improper information is just as damaging and erroneous, as undertaking to do so in argument to the jury after the close of the evidence. In either instance it is calculated to prevent a fair and impartial trial and a verdict based upon and confined to the competent evidence introduced upon the trial.

■ The law is well settled that an indictment or an arrest is not admissible in a civil suit to impeach a witness. As stated in Texas & N. O. R. Co. v. Parry, Tex. Com.App., 12 S.W.2d 997, 1001: "The rule is that where the witness has been legally charged by indictment, complaint, or information and complaint, with an offense involving moral turpitude, and has been legally convicted of such offense in a court of competent jurisdiction, or where the witness has been so legally charged with such offense, and presently admits his guilt, then such matters are admissible in evidence touching his credibility as a witness. Kennedy v. International-Great Northern R. Co., Tex.Com.App., 1 S.W. 2d 581. Otherwise, in the impeachment of a witness, the inquiry should be confined to his general reputation for truth and veracity, and should not be extended to his general moral character." See also Cooper v. Irvin, Tex.Civ.App., 110 S.W.2d 1226, 1229; Texas Employers Ins. Ass'n v. Drayton, Tex. Civ.App., 173 S.W.2d 782; 45 Tex.Jur., § 257, p. 123.

■ As stated in 41 Tex.Jur., § 38, p. 744, "It is misconduct for an attorney to propound to witnesses questions as to matters concerning which he is aware that the witness cannot testify, or apparently to prove such things in a mode in which they cannot be proved, with a view to falsely impressing the jury." And where such misconduct is prejudicial it constitutes grounds for reversal. Springer v. Strahan, Tex.Civ. App. 180 S.W.2d 654.

■■ It is also a well-settled rule of law that where the misconduct is of such nature that its prejudicial effect on the jury cannot be removed by sustaining objection thereto or by instructing the jury not to consider it, failure of opposing counsel to make such objection or request will not constitute a waiver nor prevent a reversal. Stewart Oil Co. v. Brown, Tex.Civ.App., 134 S.W.2d 375; 41 Tex.Jur., § 93, p. 832, and cases cited. In the instant case, however, we think the objections and requests of appellant's attorney were sufficient to call for affirmative instructions by the court both to the jury and to appellee's counsel; but none were so given.

■■ Where prejudicial misconduct occurs, calculated to injure the rights of the adverse party, the burden rests upon the offending party to show that no injury resulted. As stated by the Supreme Court in Chapin v. Putnam Supply Co., 124 Tex.

247, 76 S.W.2d 469, 470: "The rule has been announced, and is adhered to by this court, that, when improper argument has been made, the adverse complaining party is entitled to a reversal of the judgment, as a matter of law, if, under all the circumstances there is any reasonable doubt of its harmful effect, or unless it affirmatively appears no prejudice resulted." See also Texas Employers Ins. Ass'n v. Drayton, Tex.Civ.App., 173 S.W.2d 782. Whether or not the rule of reasonable doubt of injury has been modified by Rule 327 of the Texas Rules of Civil Procedure, we find it unnecessary to determine for the reason that we are of the opinion that the misconduct probably did, in the instant case,. result in injury.

The only issue presented in this case was whether Price had paid Pelton $720 in settlement of the Harrington judgment. On this issue, their testimony was in direct conflict. Pelton's testimony was in nowise corroborated. Price testified that he did and that Pelton signed a receipt for it. Appellant's wife testified that she was present and saw Pelton sign such receipt and afterwards had it in her possession but lost it. A Mrs. Hill testified that she lent Price the money with which to make such payment and shortly thereafter saw the receipt signed by Pelton. A Mr. Jackson, income tax accountant, who prepared Price's income tax reports in 1945, testified that he obtained all of Price's files for that purpose, and sometime thereafter at the request of Price, searched and found among same a receipt signed by Pelton for $720, which he turned over to Mrs. Price. The record also discloses that in 1941 Pelton and Price signed a written agreement reciting that in consideration of the assignment by Price to Pelton of certain lands in Runnels County, Pelton agreed to "secure as far as possible" releases of judgments, including the one here involved, against Price, and Price agreed to pay his expenses in doing so. Further that in September 1943

Pelton obtained an assignment to himself of Harrington's judgment, which assignment he did not file for record in Runnels County until March 3, 1944; and Price testified that he did not know of such assignment when he made the settlement with him for $720.

While the credibility of the witnesses is a matter for jury determination, in view of all these facts and circumstances, we think that the misconduct complained of probably did, as it was calculated to do, discredit Price's credibility in the minds of the jury and so influence their findings to such extent that their verdict should not be permitted to stand.

This conclusion renders unnecessary a discussion of the question of newly discovered evidence set up in appellant's motion for a new trial. In view of a reversal we deem it proper to note appellant's further contention, urged as fundamental error, that the holders of the other undivided interests in the leases on which the trial court foreclosed the judgment lien, were necessary parties to said suit. Appellant claimed to own only an undivided ¼ interest in such leases.

This contention is not tenable. Suit was not for partition of said lands but for foreclosure against the owner of an undivided interest upon his interest only, and would not affect the owners of other undivided interests. No request was made by appellant that such owners be made parties, and under the decisions, they were not necessary parties. Without further discussion of this question we cite the following cases as concluding the matter against appellant: White v. Glenn, Tex. Civ.App., 138 S.W.2d 914; Patton v. Texas Pac. Coal & Oil Co., Tex.Civ.App., 225 S.W. 857; 18 Tex.Jur., § 12, p. 545.

For the reasons stated the judgment of the trial court is reversed and the cause remanded for another trial.

Reversed and remanded.