## MISSOURI, K. & T. R. CO. OF TEXAS v. O'HARE.

### No. 1019.

Court of Civil Appeals of Texas. Waco.

April 2, 1931.

Rehearing Denied June 25, 1931.

Spell, Naman & Howell, of Waco, for appellant.

Jos. W. Hale and Pat M. Neff, Jr., both of Waco, for appellee.

BARCUS, J.

Appellee filed this suit against appellant to recover damages which he alleged he had suffered by reason of an injury received by him while working as an assistant foreman with an extra gang in construction of a track being laid in the yards of appellant at Eureka, a suburb of Houston. Appellee alleged that while attempting to remove a spike from the end of one of the ties, he used a claw bar which had been furnished him by appellant that was worn and had one claw broken, and that by reason thereof, and by reason of the cross-ties being wet and slippery by having been recently dipped in creosote, the claw bar would not hold and it slipped from under the spike, and that he (appellee) fell and struck his right elbow on the rail or some hard substance which caused the injury. Appellant denied the allegations of appellee and affirmatively pleaded that the cross-ties were new and had been, as was the universal custom, dipped in creosote before being used, and that appellee assisted in placing same on the tracks and was familiar with the condition thereof, and had all the information relative thereto that appellant or any of its other servants, agents, or employees had. It further alleged that the claw bar was a simple tool, and that appellee had the opportunity to and it was his duty to inspect same before he used it, and that by reason of same being such a simple tool, appellee was not entitled to recover. Appellant further alleged that the tracks were being built so as to enable it to handle interstate commerce and that at the time of the alleged injury, a part or all of said tracks were being used for the purpose of handling interstate business.

The cause was tried to a jury, submitted on special issues, and resulted in judgment being entered for appellee. The jury found that appellant furnished appellee the claw bar in question and that at the time same was furnished, it was so worn as to be defective and that the worn condition caused same to slip and was a proximate cause of the injury. The jury further found that the claw bar was broken at the time it was furnished and that same caused it to slip, and that the broken condition of the claw bar was a proximate cause of the injury. The jury further found that the claw bar was such a tool that it was necessary to make an inspection thereof to determine its defective condition and that a reasonable inspection thereof by appellant would have revealed its defective condition, and that appellant failed to make said reasonable inspection, and that same was negligence which was a proximate cause of the injury. The jury further found that appellant required appellee to work on wet and slippery cross-ties and that same was negligence which was a proximate cause of the injury. The jury found that appellee could not have, by the exercise of ordinary care, discovered the defective condition of the claw bar in question.

The record shows that at the time of the alleged injury appellee, as an assistant fore-

man, was in charge of a large extra gang constructing a number of additional tracks in the yards of appellant at Eureka, a suburb of Houston. Said extra gang was divided into two or more subdivisions and the work was being rushed as fast as possible so that said construction might be completed. While going from one section of the men to another, appellee discovered a railroad spike driven in the end of one of the cross-ties, and without calling for any assistance, he took a claw bar which was lying between the tracks and attempted to pull or remove said spike. One end of the claw bar was used as a pinch bar and the other end as a claw bar, same being about five feet long and weighing about twenty-five to thirty pounds. Appellee testified that he picked up a claw bar which was lying near by and, without making any inspection of the claw bar, he attempted to remove or pull the spike with same, and that the claw bar slipped loose and he fell and struck his right elbow on the rail or some hard substance and thereby injured his arm. Appellee then examined the claw bar and saw that one prong was broken. He then took the other end known as the pinch bar and straightened the spike and then used the same claw bar by shoving it further under and removed or pulled the spike. The injury occurred about 4:30 in the afternoon. Appellee continued to work until the closing hour, about 5:30 or 6, at which time he reported that he had hurt his arm by falling, but did not report that he had fallen while trying to pull a spike or while attempting to use a claw bar. He was sent to appellant's hospital for treatment.

The record shows that appellant had a tool man employed whose duty it was to get the tools in shape and deliver them in the yard for the use of the workmen each morning and gather same up in the afternoon after the close of the day's work. It was the duty of the foreman in charge of any gang of workmen, before delivering any tool to a workman, to inspect the tool to see if it was in proper condition for use, and if a tool broke during the day the foreman would have same placed in the tool car with the broken tools. There is nothing in the record to show whether the claw bar in question had or had not been used during the day, or whether same had or had not been broken by being used by some of the workmen during said day. Neither is there any direct testimony that the claw bar had or had not been delivered to and placed in the yard on the day of the alleged injury.

Appellee is a World War veteran and served overseas, and while in the army in 1918 he was taken ill. The record shows that since 1922 he has been treated two or three times each year in a government hospital of the United States, his disease having been pronounced by the doctors as a tubercular infection of the bone, or some other bone disease. He has drawn compensation from the government part of the time at $100 per month, and then drew compensation at $50 per month.

Appellant complains of the misconduct of counsel for appellee in arguing the case to the jury, and of the misconduct of the jury in arriving at its verdict. The record shows that the trial court instructed the jury that in addition to other named matters, they could take into consideration, in arriving at the amount of damages appellee had suffered, his diminished capacity to earn money in the future. There was no evidence offered as to how long appellee would live. It was shown that he was at the time of the injury forty years old. While appellee's counsel was arguing the case to the jury, he stated: "I say you should look out into the future to see what his (appellee's) diminished earning capacity from here on out will be. How long is from here on out, gentlemen? I don't know and you don't know. The best guide I know is to go to the Good Book and what does it say? God Almighty has awarded it and accorded man a life of three score and ten years. If you take forty years as the age this man was at the time of the accident, subtract that from the life God has given him to live and you will find thirty years for his future." On motion for rehearing in the trial court it developed without controversy that the jury in their deliberations, after answering all questions favorably to appellee's recovery, found that appellee's earning capacity had been diminished $50 per month, or $600 a year for the remainder of his life, and that the question then arose in the jury room as to how long appellee would live, and it was argued in the jury room that since the Bible stated that a man's life was three score years and ten, they could have no better evidence and they accepted said statement of the Bible, and based thereon they awarded appellee $600 a year for thirty years, a total of $18,000. Appellant's contention is that the verdict of the jury was based on testimony not properly before it and that the verdict is excessive, and that the above-quoted argument of counsel was highly prejudicial. We sustain these contentions. The $18,000 allowed appellee by the jury was the full amount they found his earning capacity had been diminished for the entire thirty years and appellant by the judgment was required to pay said amount in cash. While attorneys in their argument to the jury have a right to draw on their imagination and engage in oratorical flights, it is not proper for them to give testimony. Neither is it proper for the jury to consider the argument of counsel as testimony and base their verdict upon the testimony given by an attorney in his oratorical flights.

Appellant contends that the trial court erred in refusing to give its peremptory instruction and that this court should reverse the judgment of the trial court and render judgment in its favor. Its theory is that the work appellee was doing for appellant at the time of the alleged injury was in connection with its interstate business and that the claw bar was a simple tool and that appellee could have by a mere casual inspection seen that same was worn and broken, and that under the undisputed facts appellant would not be liable to appellee by reason of his being injured while using such simple tool to pull a spike; and it contends that the slippery creosoted cross-ties were open and obvious to appellee, and that he had assisted in putting same on said track and had all the information and knowledge relative thereto that appellant or any of its agents, servants, or other employees had. Appellant further contends that since the jury found that it could have by a reasonable inspection discovered the defects in the claw bar and that appellee by a reasonable inspection could not have discovered same, said findings are in conflict and irreconcilable and show that the jury's answers were the result of prejudice or some other undue influence. There was no direct testimony offered as to how or when the claw bar in question was placed in the yards by appellant for use by its workmen, nor as to its condition at the time same was so placed, nor as to whether same had or had not been inspected by appellant before it had been placed in the yards for use, or as to whether it had been used at any time since being placed in the yard. Since the cause must be reversed for other reasons, and since the testimony may be more fully developed on another trial, we do not deem it necessary to and we do not pass upon these questions.

 Appellant complains at the action of the trial court in permitting appellee, while his witness Dr. Kee was testifying, to exhibit his arm to the jury and in permitting Dr. Kee to examine same in the presence of the jury and testify relative thereto; appellant's contention being that since appellee had previously exhibited his arm to the jury, the further exhibition thereof was a repetition of the same testimony and was calculated to and did highly prejudice the jury against appellant. Since this cause is to be reversed on other grounds, it is not necessary for us to determine whether the action of the trial court in overruling said objection constitutes reversible error. In view of another trial, we think appellee had the right, if he desired, to exhibit his injured arm to the jury, and after he had once so exhibited same, the trial court should not again permit him to exhibit his injured arm unless it was necessary in order for the doc-

tor to testify intelligently relative thereto. This is a matter primarily lodged in the sound discretion of the trial court, subject to a review by the appellate court.

The judgment of the trial court is reversed, and the cause remanded.