## AMERICAN NAT. INS. CO. v. SHEP-<br>HERD et al.

### No. 10078.

Court of Civil Appeals of Texas. Galveston.<br>
Oct. 17, 1935.

Rehearing Denied Dec. 19, 1935.

Frank S. Anderson, of Galveston, and Williams, Lee, Sears & Kennerly, S. R. Fisher, and W. H. Blades, all of Houston, for appellant.

King, Wood & Morrow and H. E. Cox, both of Houston, for appellees.

PLEASANTS, Chief Justice.

This is a suit by H. L. Shepherd, who sues for himself and as next friend for his minor son, Jesse Foster Shepherd, to recover damages from appellant for injuries to his son alleged to have been caused by the negligence of Wm. W. Saunders in the operation of an automobile driven by him in the performance of the duties of his employment. The petition alleges the several acts of negligence of Saunders in the operation of the automobile as the agent and employee of appellant, acting in the scope of his employment. The alleged serious, painful, and permanent injuries to the minor are set out in detail, and damages are asked for him in the aggregate sum of $35,000. For himself the plaintiff asks to recover damages for loss of the services of his minor son at the rate of $75 per month until the minor became of age; the whole amount so claimed being $7,000. Plaintiff further claims the sum of $700 for the reasonable and necessary expenses incurred by him for hospital charges and

medical and surgical treatment given the minor after his injury.

The defendant answered by general demurrer and general denial, and especially pleaded that Saunders, the operator of the automobile that injured the minor, was not the agent and employee of defendant at the time he caused the injuries complained of in the petition, but, on the contrary, was an independent contractor over whom defendant exercised no control or supervision of any kind in the mode or manner of his soliciting life insurance for defendant or collecting premiums due defendant. "That the said party in soliciting insurance and collecting premiums for this defendant was carrying on and performing a distinct trade or calling, independent of the control, direction or supervision of this defendant, and that the said party had the entire control of such work in so far as the manner, means, mode and method were concerned, and was free to dispose of his own time and personal efforts according to his pleasure, without responsibility to this defendant, and that the said party was not furnished by this defendant with any means of conveyance or transportation, and was not given by this defendant any consideration for any conveyance or transportation the said party might furnish to himself; and this defendant exercised no right of control over any means of conveyance or transportation furnished by this said party, and had no right to exercise any such control, and the automobile which was used by this said party at the time of the injury complained of by the plaintiffs and by which instrumentality the injury complained of was inflicted was not under the control, direction or supervision of this defendant; that this defendant did not exercise any control, direction or supervision, and did not have the right of control, direction or supervision, over the manner, means, mode and method used by this said party in accomplishing and obtaining the results which he contracted to do, and did not exercise any control, direction or supervision over the automobile used by said party, and had no right to exercise any control, direction or supervision over said automobile."

This answer further avers in substance that, if said Saunders was an agent of defendant at the time of the collision in which plaintiff's minor son was injured, said agent was not at such time engaged in the performance of any duty within the scope of his employment or authority in furtherance of defendant's business.

It is further averred that the automobile which Saunders was driving at the time of the collision was the separate property of the wife of Saunders, or the community property of Saunders and his wife, and defendant did not pay any of the operating expenses of said automobile, nor make any reimbursement therefor; that defendant did not require nor consent to the use of the automobile, nor authorize its use in defendant's business either expressly or impliedly, and had no right or authority to control, and exercised no control, over the automobile or its operation; that the alleged agent was using the automobile at the time in question for his own convenience and comfort; that at the time of the accident the said agent, with the express consent and permission of the owner of the car, Mrs. William W. Saunders, was engaged in the use of such car as a family purpose car with the custody and care of the minor son of William W. Saunders and wife; and that the alleged agent at the time was engaged in the primary object and purpose of caring for and keeping in custody such minor son at the time of the accident.

Defendant further pleaded contributory negligence on the part of the minor plaintiff, and in the alternative pleaded that, if the minor plaintiff was not guilty of contributory negligence, the injuries sustained by him in the collision were wholly the result of an unavoidable accident.

After overruling motions for an instructed verdict by the plaintiffs and defendant, respectively, the court submitted the cause to the jury upon special issues.

In answer to the special issues submitted by the court, the jury found in substance that Saunders, at the time the boy was struck by the automobile and injured as alleged in the petition, was in performance of a duty within the scope of his employment, that Saunders was guilty of the several negligent acts alleged in the petition, and that each of said negligent acts was a proximate cause of the injuries complained of in the petition.

The jury further found against the plea of contributory negligence and found damages in the amounts stated in the judgment.

Upon return of the verdict, appellant requested the court to render judgment in its favor non obstante veredicto. The court refused this motion, and rendered judg-

ment upon the verdict in favor of the minor plaintiff for the sum of $20,000, and in favor of plaintiff H. L. Shepherd for $5,000.

When this case was submitted on January 17, 1935, on briefs and oral argument of the respective parties, our attention was called to the fact that a companion case, American National Insurance Company v. Denke et al., in which the plaintiff sued to recover damages for injury to his minor son caused by William Saunders, the driver of the automobile which caused the injury of which appellant complains, and in which the evidence on the issue of the liability of the appellant company is practically identical with the facts in this case, had been affirmed by the Waco Court of Civil Appeals [American National Ins. Co. v. Denke et al., 65 S.W.(2d) 522] and was pending in our Supreme Court on a writ of error which had been granted by that court. When we came to consider this case in consultation, we deemed it proper to pass it until the final decision of the Supreme Court in the Denke Case, and such order was made and entered on February 21, 1935.

While the Denke Case has not yet been finally decided, we have concluded that another decision of our Supreme Court [Texas Power & Light Co. v. Denson, 81 S.W. (2d) 36], rendered subsequent to the granting of the writ of error in the Denke Case, has finally decided the question of liability upon the facts of this case. Our attention having been called to the decision in the Denson Case, in which a motion for rehearing has been refused, we have concluded that we should not longer delay a decision of this appeal to await the decision by the Supreme Court in the Denke Case.

No question is raised by appellant's assignments or propositions as to the sufficiency of the evidence to sustain the findings of the jury that Saunders, the driver of the automobile, was guilty of the several acts of negligence alleged in the petition and submitted to the jury, and that each of said acts was negligent and a proximate cause of the injuries complained of. Appellant's main contention is that the evidence wholly fails to show that the relationship of master and servant existed between Saunders and appellant at the time of the injury complained of by appellee, and therefore the trial court erred in not instructing a verdict for appellant.

■ The contract of employment of Saunders introduced in evidence in this case is the identical contract on which the judgment in the Denke Case, supra, was rendered. This contract, we think, clearly requires that Saunders will give his whole time to the work of his employment. The evidence showed that Saunders was required to make collections of insurance premiums due appellant on Monday, Tuesday, and Wednesday of each week, and solicit insurance on Thursday, Friday, and Saturday. Saunders agreed to solicit new insurance and collect premiums regularly each week, and to "obey the orders and carry out the instructions of the Company, and use his best efforts to further its success." In his contract with appellant Saunders agrees to keep true accounts of the business in the books to be furnished by the company and to make remittance every week at the time required, and on the forms furnished by the company, of all moneys received by him; that out of any "salary" that may become due him by the company it shall be permitted to first reimburse itself for the cost incurred by it in furnishing him with a certificate of authority. He agrees that he will not forward any application "except on lives personally seen by me at the time the application is made." He agrees that he will send to the home office each week with his account, and on the proper forms, a list of all policies upon which four weeks' premiums are due at the time of making up his account. He agrees to hold all books and other supplies furnished him by the company as its property, and that such shall be at the absolute disposal of the company at all times, and that he will deliver the same to the company at the date of his "resignation" or "dismissal."

The contract provides that, upon Saunders' failure on Monday of any week, or on any other days required by the company, to account and pay to the company all moneys collected by him, such failure shall be construed in law as being fraudulent. Saunders binds himself "to comply in all respects with the instructions and rules from time to time issued by the Company."

Under the contract, Saunders is not permitted to resign without giving seven days' previous notice in writing, and, in case of his resigning the agency or of his being dismissed therefrom, he agrees to "introduce my successor to all the policy holders in my agency after such resignation or dis-

missal, if requested to do so by the Company."

The contract provides that it may be revoked at the pleasure of the company without notice; that, if Saunders should thereafter be employed by the company under any other appointment, he agrees that any indebtedness of his to the company shall be charged to the account under such other appointment. It is further provided that Saunders shall have no interest in any collections until the gross sum thereof has been paid by him to the company in cash, and that any "salary" to which he is entitled shall be paid to him "in accordance with the rules of the Company."

In the contract Saunders acknowledges having received a copy of the company's "Manual of Instruction," and the contract provides that he shall "conform to all of its requirements" and return it on demand or at the termination of the contract.

In the contract the company agrees to pay the agent a "salary" based on 15 per cent. of the amount collected each week on debit, and, "in addition to the salary described," the company agrees to credit the agent with an amount equal to fifteen times the net increase on white industrial business, on the debit, "said account to be known as a reserve account" from which the agent "will be allowed a special salary of two-thirds of the times of the net increase made each week, but not to exceed $12.50 any week, until the reserve has reached that amount required by the Company as considered sufficient to cover the loss that would be sustained by the Company in event of the agent's resignation or dismissal which a successful continuance of the agency might have secured to the agent and the Company."

The contract provides that "the amount of special salary to be paid to the agent in any week" shall not amount to more than the quality of the business in the opinion of the company will warrant, and that "in no case shall the agent be entitled to any 'salary' described herein" until all the conditions contained in the agreement have been fully complied with.

It is provided that, should the premium arrears on the debit for any week exceed 40 per cent. of the total debit, or the per cent. of collections fall below 94 per cent., "all special salary will be withheld until conditions are regarded as satisfactory."

The contract provides that the company will allow the agent a commission upon the cash premiums on new policies on the "ordinary plan" that might thereafter be secured for the company by the agent; there being set out in the contract a schedule of commissions on the first year's premiums.

It is provided that the company will allow the agent a collection fee of 10 per cent. on the second policy year renewal premiums collected by the agent, and that the agent may collect premiums on renewal of business written by industrial representatives and located in the territory designated as his debit, the collection fee to accrue only as premiums are paid to the company in cash.

It is provided in the contract that, "if this agreement and the employment thereunder" shall terminate by resignation, "dismissal," death, or otherwise during any year, the "salary" or commission which the agent shall have received from the company shall be in full of all claims and demands upon the company in favor of said agent "under this agreement for his services" up to the time, and that all further "salary" or commission which a successful continuance of the agency might have secured to him should be forfeited.

The contract further provides that any bonus agreed to or implied in connection with the company shall be at the option of the company, and the same is to be construed "as a part of said agent's salary or commission."

It is provided that the agent shall furnish to the company, "to secure the faithful performance of duty," such bond as the company shall prescribe, which bond shall be held to cover all shortages, of any and every kind, with which the agent is chargeable "according to the Company's rules and practice." It is further provided that the agent shall not be entitled to any salary or commission until all the conditions and agreements contained in the contract "have been duly complied with," and, in case the agent shall resign or be "dismissed," he shall be held responsible.

It seems to us that the provisions of the contract before set out clearly show the existence of the relationship of master and servant, and there can be no question of the liability of appellant for the negligence of Saunders when acting in the performance of the duties of his employment.

The evidence is sufficient to support the finding of the jury that, at the time Saunders negligently injured the minor plaintiff as alleged in the petition, he was en-

gaged in the performance of the work of his employment in furtherance of appellant's business. There is nothing in the contract which denies Saunders the right to use his own or his wife's automobile in making calls upon prospective purchasers of insurance in appellant's company, and the ownership of the automobile cannot, upon the facts of this case, affect the question of appellant's liability.

This holding is, we think, fully sustained by our Supreme Court by its approval and adoption of the clear and able opinion of Judge Ryan of the Commission of Appeals in the case of Texas Light & Power Co. v. Denson, 81 S.W.(2d) 36, 38.

■ The test of whether the employer is liable for the negligent acts of his employee is thus stated in the Denson Case: "If the act complained of is done within the scope of the general authority of the servant, in furtherance of the master's business and for the accomplishment of the object for which the servant is employed, the master is liable."

■ The facts of the instant case clearly meet this test. We cannot bring ourselves to believe that our Supreme Court, after adopting the opinion of Judge Ryan in the case above cited, will reverse the judgment of the Waco Court of Civil Appeals in the Denke Case, supra, on the ground that the facts fail to show liability of the defendant. We are not informed as to the grounds upon which the writ of error was granted in the Denke Case, but the opinion of the Court of Civil Appeals in that case discloses that one of the justices dissented on the question of excessive verdict raised by the appellant, and it may be that the writ was granted on that alleged error. However this may be, we are so fully convinced that the judgment in that case will not be reversed by the Supreme Court on the ground of nonliability of the appellant that we have concluded that the decision of this appeal should not be longer delayed.

The rule announced in the Denson Case is supported by numerous decisions by appellate courts in this and other states and by the United States Supreme Court, cited in the opinion in that case. We deem it unnecessary to recite any of these cases in this opinion.

The evidence in this record upon the question of whether Saunders at the time he injured the minor plaintiff was acting in the scope of his authority as appellant's employee, briefly stated, is as follows:

As stated in appellant's brief, the accident occurred in the city of Galveston on the afternoon of Friday, January 22, 1932, at about 4:30 o'clock in front of the John Sealy Hospital Nurses' Home, where a street or public roadway, known as Seawall boulevard, stops; the street there meeting a curb and rail erected in front of the nurses' home. The minor plaintiff and several companions were near the railing erected on the curb on the north side of Avenue B, or Strand street, Saunders was driving north or northwest on the boulevard toward the nurses' home, and, when he reached Avenue B, instead of turning west down Avenue B, which is also known as Strand street, continued to drive in the northerly direction and drove into the curb and rail. The minor plaintiff's legs were caught between the car and the rail and broken and crushed. Saunders testified in substance that on the morning of January 22d he went to the company office and there met Mr. Johnson, a new agent of the company, who he was instructed to accompany to the territory allotted to him and to work with this new agent that morning. He obeyed these instructions, and went with Mr. Johnson to visit his list of prospects and worked them. This list of prospects was obtained by learning the names of new residents in the territory when going over on Mondays, Tuesdays, and Wednesdays the debits in that territory. He worked with Mr. Johnson until about 11 o'clock. He then went home and into his territory to write an application for insurance. He got lunch at home about 12 o'clock, and after lunch went to a place on Avenue M-½ where he had a prospect for a policy. He was at this place about 2:30. He could not remember the name of the person he went to see on Avenue M-½ in regard to obtaining a policy in appellant's company. From this place he went back into his own territory, seeking new business. He had some new families in his territory and some prospective policyholders around M-½ and Twelfth street, on whom he called. From there he started to go to Strand street. He had worked with Mr. Kries, another new agent of the company, a few days before and procured a list of prospects in that territory. He was on his way to see these prospects at the time the accident in which the minor plaintiff was injured occurred. Before starting to Strand, he went home to see if he had

any mail, and then went to the boulevard and drove thereon to the nurses' home on Strand. His intention was, when he reached Strand, to turn west down that street to see one of the prospective purchasers of insurance who resided on Strand from two to four blocks west of the place of the accident. He intended, after seeing this prospect, to leave his nine year old boy, who was with him in the automobile, at 810 Market street, and go to the company's office to attend a meeting of company agents at 5:30 o'clock. This meeting was called by the superintendent or his assistant for the purpose of ascertaining the result of the agents' work for the day. Two witnesses for appellees testified that Saunders had called on them at their respective homes between 3 and 4 o'clock on the day of the accident.

We think this evidence is clearly sufficient to sustain the finding of the jury that Saunders at the time he caused the injury to plaintiff was engaged in the performance of the duties of his employment in furtherance of appellant's business.

■ Appellant contends that, since the evidence shows that at the time he drove his car into the curb and rail, and caught and crushed the minor appellee as above stated, Saunders was drunk, the question of whether the accident was caused by Saunders' intoxicated condition was an issue which should have been submitted to the jury.

This contention is not sound. The correct rule is thus stated in 39 Corpus Juris, p. 1289: "Where an act inflicting an injury on a third person is committed by a servant within the scope of his authority, the fact that the servant is insane, or that he was intoxicated at the time of inflicting the injury complained of, does not exonerate the master from liability."

The basic reason for this rule, as stated in the opinion of the Kentucky Court of Appeals, Chesapeake & Ohio R. Co. v. Bowling, 149 Ky. 307, 148 S.W. 46, 48, 42 L.R.A.(N.S.) p. 83, is: "Though the person injured and the master may both be innocent, yet it is the master's servant who causes the injury, and therefore the master should bear the loss."

Appellant's attorneys cite no case which, in our opinion, supports the rule contended for by them.

■ Appellant next complains of the failure of the trial court to submit to the jury the issue of unavoidable accident. We do not think the evidence raised this issue. Appellant contends that this issue was raised by the testimony of Saunders that he did not turn to his left when he reached the intersection of the boulevard and Strand because there were boys skating at the intersection of the streets. This testimony, if accepted as true, does not, in our opinion, raise the issue of unavoidable accident, in that it fails to show that the accident happened from an unknown or unforeseen cause or in an unexplainable manner. El Paso Electric Co. v. Hedrick (Tex.Civ. App.) 39 S.W.(2d) 128; Dallas Ry. & Terminal Co. v. Darden (Tex.Com.App.) 38 S.W.(2d) 777; Southland Greyhound Lines v. Dennison (Tex.Civ.App.) 62 S.W.(2d) 500.

■ If we are wrong in this conclusion, the contention under this assignment cannot be sustained for the further reason that the evidence before set out could only raise the question of unavoidable accident in respect to the act of negligence alleged in the petition based on the failure of Saunders to turn to the left when he reached the intersection of the streets. The petition further alleges, and the jury finds, that Saunders was also negligent in failing to turn to the right after seeing the boys in the street, and in failing to use due diligence to prevent injury to the minor appellee after he discovered his peril.

■ The remaining assignments complain of excessiveness in the verdict. In so far as the minor plaintiff is concerned, the evidence is amply sufficient to sustain the amount of damages awarded him by the jury. In respect to the question of excessiveness in the verdict in favor of plaintiff, H. L. Shepherd, for loss of his minor son's services and the expenses incurred by the father in the care and surgical treatment of his son after his injury, the amount of the expenses claimed is fully sustained by the evidence. The amount awarded by the jury for loss of services of the son during his minority is always difficult of exact ascertainment. But under the facts of this case we do not feel justified in failing to follow the holding of the Waco Court of Civil Appeals in the Denke Case, supra. Under the rule announced in the Denke Case, we hold that there is no excessiveness in this verdict.

■ There is, we think, no merit in appellant's contention that the judgment should be reversed because of improper remarks of appellees' attorney in his closing

speech to the jury. The statements in the argument of which complaint is made are:

"I now desire to briefly reply to Mr. Blades' argument on the boy's condition and the measure of damages.

"He admits in his argument that the boy is permanently injured; that he will not be able to do manual labor; could not make ·a carpenter or ditchdigger or pursue any other hard manual labor, but that his condition would relieve him of the drudgery of that character of work—that his brain was unaffected, his mind was good and that he would doubtless prepare himself for some· profession or calling, better than he would have had he not been hurt, and from which his remuneration and compensation would be more lucrative than if pursuing manual labor.

"By this he means that the minor plaintiff can prepare himself for some profession or calling, such as a lawyer, doctor, dentist, engineer or some other profession, and in reply, desire to direct your attention to the cost of a course through college, of from four to seven years, to prepare himself for any such profession and, then, to the inconvenience and annoyance of pursuing such profession with one limb two inches shorter than the other."

As indicated in the remarks of appellees' attorney and shown by the bill of exceptions taken by the appellant, the remarks complained of were made by appellees' attorney in reply to an argument of appellant's attorney which was outside the record.

Where objectionable remarks of counsel are in reply to other remarks by counsel for the adverse party, and the language objected to does not pass beyond the bounds of a legitimate answer, there is no error.

We do not think it can be seriously contended that the remarks of appellees' attorney in this case, which we have before set out, passed beyond the bounds of a legitimate answer to arguments of appellant's attorney, and consequently no error is shown in these remarks.

If any error is shown in any of the assignments which we have not directly passed upon, such error is not material and none of appellant's assignments can be sustained.

It follows that the judgment of the trial court should be affirmed, and it has been so ordered.

Affirmed.