**ANDERSON–BERNEY BLDG. CO. v. LOWRY.**

No. 14597.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 7, 1944.

Rehearing Denied Feb. 25, 1944.

Marvin B. Simpson and Robert Harrison, both of Fort Worth, for appellant.

H. S. Lattimore, of Fort Worth, for appellee.

SPEER, Justice.

Plaintiff R. E. Lowry sued defendant Anderson-Berney Building Company, a corporation, for damages alleged to have been sustained when an employee of defendant slapped plaintiff on the shoulder and caused him to fall and break his hip.

Plaintiff's petition is to the effect that defendant was the owner of the Neil P. Anderson Building in Fort Worth, Texas; that the structure consisted of a tall office building and some one story buildings adjacent thereto; that he had been employed to do some painting and decorating in one of the smaller buildings; that on September 8, 1938, while he was engaged in said work, defendant's building superintendent, Mr. Countryman, whose duty it was to supervise and inspect the work being done by plaintiff, and get it done as quickly as possible, and while in the discharge of his duties to defendant, approached plaintiff while engaged in the work, and without the knowledge by plaintiff of Countryman's presence, the said Countryman struck plaintiff on the back and shoulder, and in defiant tones inquired of plaintiff why he did not get to work. Plaintiff further alleged that from childhood he had suffered with a stiff hip joint, and that because of that affliction he could not brace himself against a fall toward the injured member;

that because of the blow received from Countryman, he fell on some lumber and broke his hip. It was averred that Countryman was a man of huge stature and knew of plaintiff's afflicted hip. It was asserted that Countryman's acts were negligence, attributable to defendant, and proximately caused plaintiff's injuries. Ample allegations were made of the nature and extent of the injury, and damages were sought in a specified amount.

Defendant's answer consisted of the general denial and specially that the act committed by Countryman was committed in his own behalf through a spirit of playfulness, and was not within the scope of his employment by defendant.

A jury trial was had and the substance of the verdict was that (1) Lowry's fall was caused by the act of Countryman at the time; (2) Countryman's acts were negligence; and (3) the proximate cause of the fall of plaintiff; (4) when Countryman caused plaintiff to fall, Countryman was acting within the scope of his employment; (5) Lowry sustained an injury to his hip in the fall; (6) Countryman's act on the occasion in question was intended by him only as a friendly and social gesture on his part; (7) it was intended by Countryman that his act on that occasion should have an effect on the performance of the painting work being done by plaintiff. After an explanation and definition by the court of what might be considered by the jury, of which no complaint is made, the jury found plaintiff's damages to be $1500. Judgment was entered for plaintiff on the verdict for the amount so found, and defendant has appealed therefrom.

This case has been before us upon a former appeal. Anderson-Berney Bldg. Co. v. Lowry, Tex.Civ.App., 143 S.W.2d 401. There were other matters involved at the former trial, not before us now, as will be seen by the statement made by us in the cited opinion. We reversed and rendered the trial court's judgment. It will be noted that we held it was error to submit special issue No. 5, quoted in the opinion. That issue was not submitted at the subsequent trial. We also held that there was no testimony to support the finding by the jury that Countryman was acting within the scope of his employment when he injured Lowry.

The Supreme Court granted a writ of error and reversed our holding relative to the scope of Countryman's employment. Lowry v. Anderson-Berney Bldg. Co., 139 Tex. 29, 161 S.W.2d 459. The Supreme Court quoted parts of the testimony and concluded that there was sufficient evidence to take to the jury the question of whether or not Countryman was acting within the scope of his employment when his acts caused Lowry to fall.

In addition to the testimony referred to by the Supreme Court on the point, we find from this record that while Countryman denied substantially all of the material testimony given by Lowry, yet he admitted while testifying that shortly after the accident he made and signed a written statement concerning the transaction. In it he said he did enter the building where Lowry was working, and this significant language was used: "My reason for going into the building was to see how the work was getting along, as I have to look after such matters as a part of my work." Having admitted signing such statement, he testified that it spoke the truth. Upon redirect examination by defendant's counsel, Countryman's explanation of the quoted part of the written statement was: "I meant to go in (the building) and see if the work was ready for me to go ahead and do the rest of the work, the repair work that I had to do."

Counsel for defendant, the building company, admits in his brief that the testimony on this trial is substantially the same as it was on the former trial. A careful examination of the testimony reveals this to be true. Under the views of the Supreme Court, as expressed above, upon the same state of facts, there is no option left to us but to obey that Court's mandate.

The four points of error brought forward by defendant assert that the jury's findings that Countryman was acting within the scope of his employment when he committed the act complained of and that it was done by him to have an effect on the performance of the painting work being done by Lowry, are without support in the evidence and are contrary to the overwhelming preponderance of the testimony; and further it is asserted that since Countryman's act in slapping Lowry on the shoulder was only a friendly gesture by Countryman, as found by the jury, it conclusively appears that Countryman's

acts were not within the scope of his employment and his principal was not liable for the results.

Defendant earnestly contends in effect that even to concede for the sake of argument that Countryman's employment gave him supervision or control over the work being done by Lowry, the mere fact that in a spirit of playfulness he slapped Lowry on the shoulder and urged him to go to work and get the job done, and because of the gesture, Lowry fell and sustained the injury, the defendant would not be responsible for the result, because the defendant could not have reasonably anticipated that its employee would resort to the commission of an assault to get the work done. Such cases as Magnolia Petroleum Co. v. Guffey, Tex.Com.App., 95 S.W.2d 690, and Genovese v. Butt, Tex. Com.App., 48 S.W.2d 587, are cited and relied upon to support the contention. It is contended that the cited cases should be decisive of the point before us as to the acts of Countryman being within the scope of his employment. Defendant argues that since our Supreme Court had held in the Guffey case that there was no liability of the principal in that case, "It is too plain for a difference of opinion that the appellant here is not liable for Countryman's assault committed in the supervision of the painting job." The language used in the Guffey case above cited supports the contention of defendant, but we note the Supreme Court did not permit that opinion to stand; on motion for rehearing that opinion was set aside and it is stated that the Court was in error in the original holding. The reverse of the conclusions expressed in the original opinion (95 S.W.2d 690) was finally adopted as the law applicable to the facts there set out. See Magnolia Petroleum Co. v. Guffey, 129 Tex. 293, 102 S.W.2d 408. In the last opinion they also refer to the Genovese case, supra, and distinguish it from the Guffey case, and say it does not support their original view.

A reading of the Genovese case will disclose the very harsh means employed by the alleged agent to collect a debt from the principal's debtor. It was held that authority to the agent to collect the debt did not imply authority to resort to the unreasonable and harsh means employed. ■ Applicable to the instant case, it is scarcely justified to refer in this appeal to an "assault" committed by Countryman. True, Lowry left that impression, since he was unable to account for Countryman's conduct. Yet with all the testimony before them, the jury found that Countryman's acts in striking Lowry on the shoulder on that occasion was only a friendly gesture. There was a further jury finding that Countryman's act was intended by him to have an effect on the progress of the painting job being done by Lowry. Accepting the theory found by the jury that Countryman's acts were intended as a friendly or playful gesture, but that they were intended by him to get the painting job done, there is competent testimony to support both findings. Obviously Countryman wanted to enhance the progress of the work, and perhaps attempted to resort to the plan he thought most effective. It is perceivable that persons of differing temperaments would resort to different means to accomplish a desired end. One would display a superior, egotistical attitude and attempt coercion even to the extent of threatened or real violence, while another would more discreetly resort to fulsome and seductive flattery, feigned cajolery and an exaggerated display of extreme friendliness to bring about the same result. In any view taken of the record as a whole, we see no error for which the judgment should be reversed.

Under authority of the Supreme Court when it previously passed upon the questions now before us, and the other cases discussed, we conclude that the judgment of the trial court should be affirmed, and it is so ordered.

BROWN, Justice (dissenting).

Not being able to agree with the majority, I feel that it is my duty to express my views in a dissent.

This is the second time this case has been before us. See 143 S.W.2d 401, opinion by this court, and 139 Tex. 29, 161 S.W. 2d 459, 461, opinion by Commission of Appeals, adopted by the Supreme Court, reversing the judgment of the Court of Civil Appeals, on the theory that the evidence raised the issue of whether or not Countryman was acting within the scope of his employment by the Building Company when he "struck" Lowry, the plaintiff, and caused him to fall and receive injuries in the fall.

Just as in the former trial, Lowry here bottoms his case on the allegation that

"Countryman struck plaintiff in the back and on the shoulder *and in defiant tones* accompanying said blow demanded of plaintiff why he did not get to work". (Italics the writer's.)

All of the allegations made on the first trial raising issues that were discussed by the Supreme Court and determined without evidence to support them were made at the last trial, but all issues were abandoned by the plaintiff excepting those disclosed in the opinion of the majority.

The writer thinks it well to observe that on the first hearing the jury found: "That in causing the plaintiff to fall on the occasion of the accident Countryman was not acting in playfulness and that his action was not personal as distinguished from the performance of the duties which he was engaged by the defendant to perform." ·

This finding tended to support plaintiff's allegation to the effect that Countryman struck plaintiff and in defiant tones accompanying the blow demanded of plaintiff why he did not get to work.

The writer is of opinion that the allegations made and the finding of the jury thereon must have largely determined the conclusions reached by the Supreme Court. In its opinion this language is used: "If Countryman had authority, express or implied, to supervise the work with respect to hastening its completion and exceeded his instructions or used unlawful force to accomplish such purpose, his act may be said to be in the course of his employment * * *. If Countryman turned aside from the work of his master to engage in sport or playfulness for his own amusement, he was not for the time being acting for the master and the master is not liable for the resulting injury."

It occurs to the writer that the last quoted sentence of the opinion is decisive of the case in the light of the jury's findings on the last trial.

In answer to issue No. 6, "Do you find from the evidence that at the time of the occurrence between Countryman and the plaintiff on September 2, 1938, that Countryman's act was intended by him only as a friendly or social gesture on his part?" the jury said, "Yes."

The writer does not believe that the subsequent finding either adds anything to or subtracts from the finding just quoted.

The subsequent issue and finding thereon are: "Issue No. 7: Do you find from the evidence that at the time of the occurrence between Countryman and the plaintiff on September 2, 1938, Countryman's act was intended by him to have any effect on the performance of the painting work?" Answer: "Yes."

In the first place the answer to the last question is not supported by the evidence. The plaintiff was an independent contractor and, according to his own testimony, was neither doing, nor intending to do, any work on the defendant's building. He had employed a man to finish up the work; the man was on the job when plaintiff appeared on the scene, and plaintiff testified that he was instructing this man as to the work being done; that it was almost completed and he told the man to come to another job to which plaintiff was then going as soon as he left defendant's building.

Under plaintiff's plain and uncontradicted testimony, Countryman's act could not have had any bearing on the completion of the paint job.

If plaintiff had been at work, at the time, or about to go to work, the situation might be said to have a different "slant", but how can it be reasonably said that, in the light of the undisputed facts, Countryman could have intended to hurry the doing of work that plaintiff was not only not doing, but which he had employed another to do, and which his employee was then doing?

To permit this finding to stand, in the light of the facts adduced, is to permit the jury to find that Countryman had something in his mind, some intention, that finds its basis in mere speculation on the part of the jury, a mere inference, at best.

In the second place, can it be said that, if this last finding is to stand, there is not a clear conflict in the verdict?

How can we safely say that a jury may find "that Countryman's act was intended by him only as a friendly or social gesture on his part", and permit the jury to also find that the "act was intended by him to have effect on the performance of the painting work?"

The adjective "social" means: "Of or pertaining to companionship or mutual relationship of more or less like and equal individuals; relating to the natural understanding and intercourse of individuals whose lives are distinctly shaped with ref-

erence to one another." And "gesture", when used in connection with the adjective "social", means: "A motion of the body or limbs expressive of sentiment."

In the light of the meaning of the words used in the charge and the finding made by the jury on the charge, how can it be said that the act of Countryman was one that could be rightfully interpreted as something done within the scope of Countryman's employment and for which his master must be held liable?

The plaintiff was an independent contractor. He could go to work when he pleased to do so and quit work at his will. There is no evidence tending to show that Countryman ever attempted to instruct plaintiff as to the method or manner of doing the work, or that he had any authority to do so.

Nor is there any evidence tending to show that Countryman ever attempted to direct the plaintiff concerning the hours that he was to work or the time when he should go to work, or to quit for the day; and there is no evidence tending to show that Countryman had any such authority over plaintiff.

According to plaintiff's testimony, he had the right to work day and night, if he cared so to do, and he exercised his right in this regard.

Under the established facts in this record, Countryman's act could not have had any bearing on the work that was being done and he was not then acting within the scope of his employment.

This is emphasized, unmistakably, by the definition of "scope of employment" given to the jury as a guide to answering issue No. 4. The trial court said: "An employee is acting within the scope of his employment when he is engaged in doing, for his master, either the act consciously and specifically directed, or an act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of the act, or a natural, direct and logical result of it."

There can be no contention that the act of Countryman in slapping plaintiff on the back was "an act consciously and specifically directed" by the master, and we must turn to the remaining portions of the definition for further light on the jury's right to make the finding disclosed.

How can it be successfully contended that slapping the plaintiff on the back was "an ordinary and natural incident or attribute of the act"?

Here we are asking the jury to find that the slapping of the plaintiff on his back was an ordinary and natural incident, or an attribute of the act of supervising the paint job.

The definition ends with, "or a natural, direct and logical result of it".

Here we are asking the jury to find that the slapping of the plaintiff on his back was a "natural, direct and logical result" of the act of supervising the paint job.

The definition is intended as a guide to the jury in finding the answer to the issue.

Under this definition and the facts of this case the judgment should not be permitted to stand. There is no evidence to support the finding that Countryman was acting within the scope of his authority. The judgment should not be permitted to stand. It hangs on a thread that is too slender and gossamer like. It permits the jury to enter the realm of mere speculation and to make its findings on inferences not supported by the charge of the court and the facts disclosed.