ALPINE TELEPHONE CORPORATION v.
McCALL.

No. 4449.

Court of Civil Appeals of Texas. El Paso.

March 7, 1946.

Rehearing Denied April 4, 1946.

Robertson, Leachman, Payne, Gardere & Lancaster, of Dallas, (George P. Gardere, of Dallas, Allen R. Grambling and Jones, Hardie, Grambling & Howell, all of El Paso, on the brief), for appellant.

Frank O. Ray, of Alpine, and Morriss & Morriss, of San Antonio, for appellee.

McGILL, Justice.

This is the second appeal in this case. The opinion of this court on the former appeal is reported in 183 S.W.2d 205, and that of the Supreme Court in 143 Tex. 335, 184 S.W.2d 830. The suit was brought by W. D. McCall individually and as next friend of his minor son, Earl Neal McCall, to recover damages for personal injuries to his son alleged to have been proximately caused by the negligence of the Alpine Telephone Corporation. Trial to a jury resulted in a verdict answering special issues on which judgment was entered against the corporation in favor of W. D. McCall individually for $10,000, and as next friend of Earl Neal McCall for $32,500.

The injuries resulted from a collision between an automobile driven by Oscar Moses along Holland Avenue in the city of Alpine, and a telephone pole owned and maintained by the corporation, situated near the north curb of Holland Avenue. The collision occurred between 9:30 and 10 o'clock p.m. on June 8, 1939. Appellant concedes that "the testimony upon the present trial * * * as to the circumstances surrounding the accident was substantially the same as appeared upon the previous trial." Therefore, without repeating we refer to the two previous opinions above cited for detailed statement of these circumstances.

The telephone corporation operated under a franchise granted to S. G. Smith by ordinance of the city of Alpine in 1923. Section II of this ordinance is set out in both opinions on the former appeal. The Supreme Court held that the building of the north curb of Holland Avenue by the abutting landowner and the long use of the street was sufficient to raise a rebuttable presumption of dedication, and since the telephone corporation had introduced no evidence as to the location of the curb line and had maintained the pole located south of the curb as it was established on the ground, it was guilty of negligence as a matter of law.

In an effort to establish that it had placed and maintained the pole so as to conform with the reasonable rules and regulations of the city commission of the city of Alpine as provided by the ordinance granting its franchise appellant introduced three ordinances of the city of Alpine approved April 6, 1930. These ordinances levied assessments against the property owners whose property abutted a portion of Holland Avenue, including the block where the accident occurred, to pay for grading and paving said avenue, and for constructing or resetting curbs where required, such improvements having theretofore been ordered; accepted such improvements and authorized the issuance of assessment certificates in payment therefor, and exempted from assessment certain homestead property in front of which no improvements were made. To establish that the pole was located north of the true north curb line of Holland Avenue, appellant also introduced the testimony of and a plat prepared by H. R. Gard, County Surveyor of Brewster County. The Court refused to submit requested issues as to whether the pole was maintained within the terms of the ordinance or placed within provisions of the franchise or was located north of the curb line on Holland Avenue, but submitted whether maintenance of the pole at the place it was maintained was a proximate cause of the injuries.

By appropriate points appellant contends that the court erred in refusing to direct a verdict in its favor because the ordinances above referred to approved the location of the curb line at the point of the accident at a point which placed the pole outside of the street, and hence its location could not have been a proximate cause of the accident; and also erred in refusing to submit the requested issues. As we understand the points, appellant also contends that the ordinances of April 6, 1930 "designated" the location of the pole south of the curb as it existed on the ground and constituted "reasonable rules and regulations of the city commission" within the purview of the ordinance of 1923, even though the curb as it existed on the ground constituted the true curb line, and further that such ordinances and the testimony of

Gard established as a matter of law a curb line at the point of the accident which placed the pole outside of Holland Avenue, or raised an issue of fact as to the establishment of such curb line; and that location of the pole was shown not to have been a proximate cause of the accident as a matter of law.

That the ordinances of April 6, 1930, did not operate to designate the location of the pole south of the curb as it existed on the ground regardless of whether such location placed it within Holland Avenue is, we think, apparent from the nature of the ordinances above stated. Nowhere do they mention or refer to the location of the pole. The mandatory provisions of the ordinance of 1923 that poles "must be placed on the outer edge of sidewalks next to the curb line, inside the curb stone unless otherwise designated by the city commission or other person under its direction" obviously require a specific designation to warrant the location of poles other than that specified in the ordinance, especially when such location would place the poles within a public street. No such designation is specified by the ordinances of April 6, 1930, and none can be implied therefrom. In our opinion the ordinances of April 6, and the testimony of Gard were insufficient to raise an issue of fact as to the true location of the curb line. However, we deem it unnecessary to determine this question authoritatively, in view of the Supreme Court's holding on the former appeal, which is the law of the case. It was there specifically held that the "curb line" as used in the ordinance requiring telephone poles to be placed "next to the curb line, inside the curb stone" means the line established on the ground, and is coincident with the curbstone and not some imaginary line having no existence except perhaps on a map or plat. The undisputed evidence on this trial as on the former trial shows that the pole in question was located south of the north curb stone or curb line of Holland Avenue as established on the ground, and therefore was located within Holland Avenue in violation of the ordinance. The Supreme Court also specifically held that it could not be held as a matter of law that the telephone corpora-

tion's negligence in maintaining the pole in violation of the ordinance was not the proximate cause of the accident. Since the evidence on this trial was substantially the same on this point as on the former trial, such holding forecloses the question. Spencer v. Pettit, Tex.Com.App., 34 S.W. 798; Quanah A., P. Ry. Co. v. Edlen, Tex. Civ.App., 87 S.W.2d 540; Wr. Ref.; Anderson-Berney Bldg. Co. v. Lowry, Tex.Civ. App., 177 S.W.2d 984, Wr. Ref. W. M.

■ Appellant also contends that the court erred in overruling its motion for a directed verdict, because the uncontradicted evidence showed contributory negligence of Earl Neal McCall proximately causing or contributing to his injuries as a matter of law. The contributory negligence specified in the motion was that the boy was riding on the right-hand running board of the automobile, and that he failed to keep a lookout for his own safety. In answer to special issues the jury found that the position Earl occupied on the running board of the automobile was not negligence and that he did not fail to keep a proper lookout for his own safety. Oscar Moses, the driver of the automobile on which Earl was riding, testified that he told the boys that they would have to stand on the running board, that they did not have room in the car. Earl testified that he got on the right side and had his left arm hooked around the two doors and was holding Floyd Dalton's hand over the top of the car with his right hand; that he was facing directly across the top, looking at Floyd; that his body was flush with the car; that the running board was eight inches or maybe wider and that no part of his body protruded over the edge of the running board. His testimony as to his position on the running board is corroborated by Moses. Moses also testified that after he got on Holland Avenue he was driving very slow, between 10 and 15 miles an hour, not over 15 miles. This evidence clearly raised an issue of fact as to whether Earl's position on the running board constituted contributory negligence. Although a standing position on the running board of a car is ordinarily considered dangerous, it is usually for the jury to say if it was negligence and contributed to the injury. Cyclopedia of Automobile Law &

Practice, Blashfield, Vol. 4, § 2748, p. 504, citing Robinson v. American Ice. Co., 292 Pa. 366, 141 A. 244; see also Sexauer v. Pittsburgh Ry. Co., 305 Pa. 319, 157 A. 603. Since the evidence showed there was no other place for Earl to ride; that the car was driven at a slow rate of speed; and that the position he took on the running board was a comparatively secure one, we cannot say that his riding on the running board constituted contributory negligence as a matter of law.

■■ The issue as to failure to keep a proper lookout was followed by issues inquiring whether such failure, if any, was negligence, and such negligence, if any, proximately caused the accident. It may be questioned whether such issues bore any relation to Earl's failure to warn Moses of the presence of the telephone pole. Edmiston v. Texas & N. O. R. Co., 135 Tex. 67, 138 S.W.2d 526, loc.cit. 529. If they did relate to such failure, the case of Texas Mexican Railway Co. v. Hoy, Tex.Com. App., 24 S.W.2d 18, and similar cases on which appellant relies have no application, since it was not conclusively shown that Earl knew of the dangerous location of the pole, or of any particular danger that Moses, if unwarned, would fail to perceive, or that Moses was likely to be inattentive or careless in keeping a lookout. Edmiston v. Texas & N. O. R. Co., supra, citing and approving Restatement of the Laws of Torts, Vol. 2, pp. 1282, 1283, Section 495.

As showing Earl's failure to keep a proper lookout for his own safety as a matter of law, appellant relies on his answers to certain questions propounded to him on cross-examination, which it asserts constitute admissions that if he had been looking, with the lights of the Moses car, he could have seen the telephone pole for a distance of at least 25 feet, but that he was not looking. If the evidence should be construed as constituting such admissions, nevertheless it does not show that Earl failed to keep a proper lookout for his own safety as a matter of law. He testified that he and Floyd were talking to each other and he could see the lights on the top of the car (the Moses car) and he turned and noticed the car coming (the car approaching from the west) and then

he turned back and said something to Floyd and then hit the post (pole). That he was keeping some sort of a lookout is deducible from this testimony. He being a guest on the Moses car and not being in charge of the operation of the automobile, he was not required constantly to keep a lookout as was the driver in charge of the automobile. Edmiston v. Texas & N. O. Railroad Co., supra, 138 S.W.2d loc.cit. 530; Cyclopedia of Automobile Law & Procedure, Blashfield, Vol. 4, § 2411, pp. 203, 204. Whether the lookout which he was keeping was a proper lookout for his own safety depended upon the circumstances. Blashfield, supra, § 2411, pp. 204-206. The jury could properly consider his position on the car, the proximity of the side of the car on which he was riding to the north curb of Holland Avenue, and the speed of the car. Their finding that he was keeping a proper lookout for his own safety is not without support in the evidence.

We need not labor appellant's points complaining of the submission over timely objection of the issue as to appellant's failure to give notice and warning by visible and obvious signs on the telephone pole reasonably sufficient to warn the traveling public at night of the presence of the pole in the street, and of the insufficiency of the evidence to support the jury's answers finding that such failure was negligence and a proximate cause of the injuries. Appellee also relied on the maintenance of the pole by appellant in violation of the ordinance of 1923, as constituting negligence as a matter of law, and the jury found that maintenance of the pole at the place it was maintained was a proximate cause of the injuries. From what we have said, the judgment finds support on those grounds, and if there was any error in submission of the above issues or in the court's failure to grant a new trial because of insufficiency of the evidence to support such answers, such error was harmless. West Texas Coaches v. Madi, Tex.Com.App., 26 S.W. 2d 199, 202, loc.cit.

Appellant complains of the admission of certain testimony as to the small earnings of plaintiff W. D. McCall and as to the number of telephone exchanges owned by C. H. Jennings. Jennings testified that he was manager of appellant, and "I own this telephone company." No assignment of error as to the admission of testimony concerning the number of telephone exchanges owned by Jennings appears in appellant's motion for a new trial, therefore the question of whether such admission constitutes error is not properly presented and will not be considered. Rules 374 and 418(b), T.R.C. P.; Wagley v. Fambrough, Tex.Civ.App., 163 S.W.2d 1072, loc. cit. 1074, par. 3-5, affirmed; 140 Tex. 577, 169 S.W.2d 478; Cooper v. Cooper, Tex.Civ.App., 168 S.W. 2d 686, loc.cit. 689. The only objection to the admission of testimony as to the small earnings of the plaintiff W. D. McCall was that it was immaterial, irrelevant and prejudicial. Such objection is insufficient to support an assignment on appeal. Capitol Hotel v. Rittenberry, Tex.Civ.App., 41 S.W.2d 697, loc.cit. 705, par. 12, and authorities cited; Campbell v. Paschall, Tex. Com.App., 121 S.W.2d 593.

Argument of plaintiff's counsel is set out in full. It comprises approximately 43 pages of the transcript. It would unduly prolong this opinion to copy the portions complained of as being prejudicial and inflammatory. We reproduce the substance of such portions as summarized in appellant's brief:

"(a) In calling on the jury to place themselves in the position of Earl Neal McCall at his age.

"(b) In asking the jury to remember in time to come what their neighbors might say about this verdict.

"(c) In calling attention to the fact that Mr. Jennings operated other telephone companies for the sole purpose of indicating his wealth.

"(d) In stating to the jury the legal effect of their answers to Special Issues, and asking a general verdict for Plaintiff.

"(e) In informing the jury that the degree of care to be exercised by Earl Neal McCall was predicated upon his age, experience, intelligence and understanding in direct violation of the Court's instruction in the Court's charge.

"(f) In making statements to the jury during argument of matters upon which no

evidence had been introduced concerning the life expectancy of Earl Neal McCall, and the custom of the State Highway Department in maintaining road markers.

"(g) In using inflammatory argument to the jury concerning the inability of Earl Neal McCall to serve in the armed forces of the United States when the Court had properly excluded testimony upon this point.

"(h) In arguing to the jury concerning the wages generally paid upon which there was no evidence, and which constituted unsworn testimony of the Attorney."

There was no objection to any of such argument at the time it was made with the exception of that referred to in (d).

■ It is apparent from the references to the arguments in (a) (c) and (h) that each of such arguments when considered separately was not so prejudicial or inflammatory but that any harmful effect therefrom could have been cured by withdrawal of counsel, or instruction from the court. Appellant therefore waived the error by its failure to object under the familiar rule of Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054. The arguments for which reversal was ordered in the cases cited in support of (a) and (h) in no way resemble the arguments here referred to. In all of the cases cited in support of (c) where a reversal was ordered because of improper argument contrasting the wealth of the defendant with the poverty of the plaintiff, objection was timely made and overruled.

■ It is questionable whether the argument referred to in (d) is susceptible of the construction placed upon it by appellant. A careful examination of the bill of exception prepared by the court reveals that the argument did no more than state the substance of defendant's defensive pleading and point out that the defensive issues began with issue No. 7. This was done after counsel had discussed issues Nos. 1 to 6, which submitted plaintiff's grounds of recovery. The argument did not otherwise suggest the legal effect of answers to the defensive issues. In our opinion it did not have this effect. International-Great Northern R. Co. v. Pence, Tex.Civ.App., 113 S.W.2d 206, loc.cit. 211, and authorities cited. Wr. Dis. Even though it did have such effect, there is strong support for the position that by instruction or withdrawal the error could have been cured. McMullen v. Parker, Tex.Civ.App., 45 S.W.2d 1011; Gillette Motor Transport v. Blair, Tex.Civ.App., 136 S.W.2d 656, loc. cit. 662, 2nd col., Wr. Dis. Judgment correct; Campbell v. Paschall, Tex.Com.App., 121 S.W.2d 593, loc. cit. 594.

The objection made was insufficient to call the court's attention to such error.

■ The argument referred to in (e) merely reminded the jury of the fact of Earl's age at the time of the accident, which was in evidence. It did not urge them to apply a standard of care other than that specified in the court's charge. It was unobjectionable. The argument referred to in (f) relating to the custom of the Highway Department in maintaining road markers could not have prejudiced appellant, since the finding of appellant's failure to give notice and warning by visible and obvious signs at or on the pole is immaterial in view of other findings which support the judgment. We think any harmful effect of the improper reference to the Biblical expectancy also referred to in (f) could have been cured by proper instruction. The case of Missouri K. & T. R. Co. of Texas v. O'Hare, Tex.Civ.App., 39 S.W.2d 939, Wr. Dis., relied on by appellant is distinguishable. While apparently no objection was made to similar argument in that case, it affirmatively appeared that the jury accepted the Biblical expectancy as the basis of their verdict. The reversal was ordered on this ground. Here the record affirmatively shows that the jury did not accept the Biblical expectancy as the basis for arriving at the amount of damages they awarded to Earl.

■ The argument referred to in (g) was proper. The testimony of Floyd Dalton given on the former trial was admitted on the statement of appellee's counsel, made without objection, that Floyd was in the army and overseas in Germany. The evidence showed that Earl and Floyd were 'the closest friends"; that Earl was over

twenty years of age at the time of the trial; that prior to his injuries he had participated in athletics while in school, playing basketball, football and baseball; and the nature of his injuries from which his unfitness for military service was apparent. The court instructed the jury that they might consider mental suffering as one of the elements of the damage to Earl. The reasonable inference and deductions from facts and circumstances in evidence may be drawn in argument. 41 Tex.Jur. p. 772, Sec. 56. It could reasonably be inferred from the above evidence that Earl· became incapacitated for military service because of his injuries. The thought of his inability to serve his country as his closest friend was doing could have been a source of keenest mental suffering to him.

■■■■ A most serious question is presented by the argument referred to in (b). Near the close of his opening argument, Mr. Frank O. Ray, of plaintiff's counsel, stated: "We ask that you render such a judgment as you feel is in accord with the evidence and testimony, and in line with the terrible misfortune, and having been just, be generous, so that in after years when you see that boy limping along, struggling through life, doing the best he can, but with this infirmity over which he had no control and for which he is in no manner responsible, *you won't hear your neighbors say 'Poor boy! something should have been done for him.' Don't be in a position to think that you had an opportunity to help him and to help his father with a few measley dollars and cents. Don't place yourself in the position of hearing such remarks and having such regrets, in years to come, that you had an opportunity to do something for him and didn't do it."* (Emphasis ours.)

There can be no doubt that such argument was improper and inflammatory. It was a direct warning that if the jurors should not "be generous" in their award of damages to Earl they might have regrets in after years because of what their neighbors might say when they saw the boy in his crippled condition. The rule is now settled that when improper argument is of such a nature that its harmful effect could not have been cured by withdrawal of counsel or instruction of the court, or ·withdrawal or instruction would not have rendered its harmful effect free from doubt under all the circumstances, objection need not be made, and a reversal is required as a matter of law unless under all the circumstances it affirmatively appears no prejudice resulted. Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302, citing: Chapin v. Putnam Supply Co., 124 Tex. 247, 76 S.W.2d 469; Texas Employers' Ins. Ass'n v. Drayton, Tex.Civ.App., 173 S.W.2d 782, W. R. W.M.

■■■■ It is generally very difficult to determine whether under all the circumstances a particular argument falls within the category referred to or whether it affirmatively appears no prejudice resulted therefrom. We have found no authoritative general rule. The question depends upon "the particular argument made in the particular case". In an excellent article appearing in Vol. VI, Texas Bar Journal, pp. 536 and 552, the question is discussed, authorities cited, and the conclusion reached by the author that most any·type of inflammatory argument other than one bringing before the jury information that they did not have and under the law were not supposed to have, can be cured by an instruction. An analysis of the cases cited, including the leading case of Smerke v. Office Equipment Co., supra, does place those cases in which a reversal was ordered in this category. We have found no case in which a reversal was ordered in the absence of objection where the element of improper information was lacking. It is a harsh rule which renders the court helpless to do anything except declare a mistrial in a meritorious case because of some remark of counsel, perhaps made through inadvertence in the heat of argument. We are unwilling to extend the application of such rule any further than the Supreme Court has required. A reversal of this case would do so.

■■■■ Point is made that the argument as a whole was so inflammatory and prejudicial as to require a reversal; in other words, that while none of the arguments complained of standing alone require a reversal, yet when taken together rever-

sible error is shown. This is the rule applied in Smerke v. Office Equipment Co., supra, which the Supreme Court recognized but held not applicable in the recent case of King v. Federal Underwriters Exchange, Tex.Sup., 191 S.W.2d 855. We think it has no application here. None of the arguments complained of were extended or continuous as in the Smerke case. Apart from the argument referred to in (b) where breaches of the bounds of proper argument did occur, they were minor breaches, not of a serious nature.

 The evidence is ample to support the amount of damages awarded for Earl. His injuries were serious and permanent. His left arm was amputated above the elbow. Numerous operations, accompanied by excruciating pain, were necessary to replace four or five inches of bone lost from his right leg. Medical testimony estimated that he had suffered eighty per cent total permanent physical disability. The award to W. D. McCall individually was ample, but we can not say it was excessive. Actual necessary expenditures totalling approximately $4,400 for doctor and hospital bills and for automobile expense and hotel bills incurred in transporting Earl from Alpine to Dallas for necessary medical treatments were shown. Earl was approximately fourteen years of age at the time of the accident. The evidence shows he was an industrious, obedient boy. Prior to the accident he had helped his mother with the housework and mowed the yard at home, and had done yard work for other people for which he received from $1 to $1.50 per day. For three months he had worked in a bowling alley, for which he received $1 per day. The amount to be awarded for loss of services of a minor during his minority is always difficult of exact ascertainment. The verdict is not so manifestly excessive as to show passion or prejudice, or to require this court to substitute its judgment for that of the jury. A comparable verdict was sustained by the Waco Court of Civil Appeals in American Nat. Ins. Co. v. Denke, Tex.Civ.App., 65 S.W.2d 522, and by the Galveston Court of Civil Appeals in American Nat. Ins. Co. v. Shepherd, Tex.Civ.App., 91 S.W.2d 439. These cases were reversed on other grounds. See 128 Tex. 229, 95 S.W.2d 370, 107 A.L.R. 409.

Finding no reversible error, the judgment is affirmed.

### On Motion for Rehearing.

 We refused to consider appellant's point complaining of the admission of certain testimony as to the number of telephone exchanges owned by C. H. Jennings, because no assignment of error as to the admission of such testimony appeared in appellant's motion for a new trial. In its motion for rehearing appellant points out that such assignment was made, but the reference to it was omitted in its brief, and it was overlooked by us. We have considered the point and overrule it. The testimony was elicited on cross-examination of C. H. Jennings. Obviously its purpose was to ascertain why he had no records which showed when particular poles were set at given locations, after he had testified that such records were kept by large telephone companies. In our opinion, the testimony elicited did not go beyond the scope of proper cross-examination. It is now urged that such testimony was prejudicial because it served to contrast the wealth of appellant with the poverty of appellee. No such objection was made at the time the testimony was elicited; the objection was that it was not material in any way, since the suit involved appellant and no other company.

The motion for rehearing is overruled.